PERU PLOW & IMPLEMENT COMPANY, APPELLANT, V. JOHNSON BROTHERS ET AL., APPELLEES.

FILED MARCH 28, 1910. No. 15,930.

1. Contracts: CONSTRUCTION: QUESTION FOR COURT. The proper construction of a written contract is a question of law to be determined as such by the court.

2. ———: ———: LIABILITY. A contract made with a jobber for the purchase of wagons of a special character, which provides that they are to be taken by the purchaser on board the cars at the factory of a third party engaged in the manufacture of wagons, the contract allowing sufficient time for the manufacture of the same, and providing that a duplicate of the contract should be sent to the manufacturer, should be construed as a contract for the manufacture of the articles purchased, and upon the completion and delivery as provided in the contract, the purchasers are liable for the purchase price.

3. Sales: ACTION FOR PRICE: DISMISSAL. When the contract of purchase provides that payment for a part of the articles purchased shall be on six months' time and for the remainder on 60 days' time, an action for the purchase price begun within 60 days from delivery under the contract is premature, and should be dismissed without prejudice to another action for the purchase price.

APPEAL from the district court for Kearney county: HARRY S. DUNGAN, JUDGE. *Reversed with directions.*

*Lewis C. Paulson* and *Flickinger Brothers,* for appellant.

*J. L. McPheely* and *Adams & Adams, contra.*

SEDGWICK, J.

On the 9th day of April, 1907, these defendants, who were in business at Wilcox, Nebraska, made a contract with the plaintiff whereby the defendants ordered specified wagons and boxes at an agreed price to be delivered on board the cars at Lansing, Michigan, on August 1, "or as soon thereafter as possible." By the terms of the contract the wagons were to have specially made boxes with the purchasers' names stenciled thereon, and on the face of the contract was indorsed the words "duplicate to factory." The plaintiff was known by the defendants to be a dealer in wagons, with its place of business at Council Bluffs, Iowa, so that it was understood between the parties that the wagons were to be manufactured at Lansing, Michigan, and delivered to the defendants on board the cars at that place. The petition alleged the making of

the contract, and set the same out in full, and asked for
judgment for the amount of the purchase price. The con-
tract contained this provision: "This order shall not be
countermanded except on payment of 20 per cent. of the
invoice price of said order as liquidated damages." The
contract was signed "Johnson Brothers", and it was al-
leged that the defendants D. C. Johnson and O. M. John-
son are copartners, doing business at Wilcox, Nebraska,
under the firm name and style of Johnson Brothers. The
action was against them in their firm name, and also
against them individually, naming them by the initials of
their first names instead of their full names. No objec-
tion was made to this in the proceedings. The answer
admitted the contract as alleged, and denied "that any
part of the purchase price as alleged by said contract was
due on October 11, 1907, the time of the commencement of
this action." It also alleged that on the 26th of July,
1907, the defendants countermanded the order, and that
the plaintiff received the countermand before the shipment
of the wagons. The answer admits that the defendants
refused to receive the wagons and alleges the countermand
of the order as a reason for so doing, and alleges that
after the commencement of the action the plaintiff took
possession of the wagons and extras and "shipped the
same back to its factory or some other point for its own
use and benefit." The reply was a general denial.

It will be seen that by the terms of the contract the de-
fendants agreed that the order should not be counter-
manded except upon the condition that they pay 20 per
cent. of the amount of the purchase price. A duplicate
of the order was left with the defendants, but in their
correspondence they say that it has been mislaid, and
they insist that in their prior contracts for the purchase
of wagons they had reserved the right to countermand the
order "conditioned upon the failure of crops", and allege
that the crops in their vicinity had failed during that
season and that they could not sell the wagons, and urge
this as a reason for not receiving them. In this contention

the defendants were in error, as the contract contained no such condition.

On the 29th day of July of that year the defendants wrote the plaintiff as follows: "Do not ship the Lansing wagons yet that we have ordered of you.. We have plenty of wagons yet, and will let you know when to ship them." To this letter the defendants answered on August 5 that their order was placed with the factory to go forward August 1; that it was to be loaded in a car with another shipment, and that it would be impossible to stop it. The letter concluded with the statement: "We are writing the factory in regard to it today, but if the car has left the factory we hope you will accept them." Immediately upon the receipt of this letter the defendants wrote to plaintiff that the understanding was, when they gave the order, that "it was not to be shipped until we needed them." In this the defendants were also in error, as the contract was that the wagons should be shipped August 1, or as soon thereafter as possible, which would mean, of course, as soon as reasonably practicable under conditions that might then exist. In this letter the defendants also requested the plaintiff to stop the wagons at Council Bluffs, "for it is impossible for us to use these wagons now." They also say the wagon trade is small, and that they have carried wagons over from the preceding year, and that it would be foolish for them to have more wagons shipped now. The letter closes with the statement: "We will take the wagons when we need them, but we cannot possible use them now." Several other letters passed between the parties, all with the same import. The defendants declined to take the wagons because of the failure of crops and small demand for wagons. They felt that they did not need them then in their trade. The plaintiff insisted that it had procured the wagons to be manufactured under the special contract with the defendants, and that the plaintiff would be compelled to take them from the factory, and for these reasons could not release the defendants from the obligations of their contract. The

wagons were actually delivered by the Lansing company to the defendants on board the cars at Lansing, Michigan, on the 12th day of August, and in due course arrived at Wilcox on the 23d day of August.

A jury was waived, and the case was tried by the court. After the plaintiff had introduced its evidence and rested, the defendants moved the court to require the plaintiff "to elect and declare to the court upon what right he seeks to recover, whether on the contract, suing for the whole, claiming the contract to have been performed on their part, or whether he is suing for damages for a breach of the contract." The plaintiff's attorney then stated that the action "is one for damages for breach of the contract." He then made some other statements more or less conflicting, as to what the plaintiff claimed, and then said: "Our contention is that the measure of damages in this case is the amount of the goods, with interest, plus freight, the storage, demurrage and other elements which we have shown to exist, as set forth in the amendment which we endeavored to file in this case, and which we, rather than continue this case, did not file, and we would like leave at this time to amend our petition in the following particular: Instead of claiming damages $593 and interest, we ask leave to amend by inserting in place thereof $750 in the prayer of our petition, with interest." He then said that there were so many different decisions and rules that he could not further state, only "we are here claiming everything from the breach of that contract up to this time." The court then sustained the defendants' motion to require the plaintiff to elect, and the plaintiff excepted to the ruling. The plaintiff then elected in these words: "We do not propose to waive the claim that the damages which we are to recover do not include the purchase price of these wagons and fixtures, with interest, as well as the additional claims of freight, demurrage, etc., which we have shown by the testimony." There was an amendment filed to the petition which seems to have been at about this stage of the proceedings. In this amendment, which

purports to be supplemental and additional to the original petition and to state "matter and facts arising subsequent thereto", it is alleged that the wagons remained at Wilcox subject to the defendants' orders until the 11th day of November, 1907, "when, for the purpose of saving expenses and charges of storage, this plaintiff had the same reshipped to Council Bluffs, Iowa, and stored in its warehouse there, where they are at the present time, and always have been subject to the order and direction of these defendants." It also added the charges of freight on the wagons from Lansing, Michigan, to Wilcox, Nebraska, $90.60, and the freight from Wilcox, Nebraska, to Council Bluffs, Iowa, $52.05, and there was inserted a claim for $5.25 for additional goods sold on July 26, not included in the contract. The defendants were of course liable for the freight charges on the wagons from Lansing, Michigan, to Wilcox, since by the terms of their contract they were to receive them on board the cars at Lansing. The addition of the doubtful claim of freight from Wilcox to Council Bluffs and the additional item of $5.25 would not constitute such allegation of a cause of action for damages inconsistent with the claim for the purchase price of the wagons as to form a basis for requiring the plaintiff to elect between two causes of action. The fact that the plaintiff may have offered evidence that was incompetent under the allegations of its petition, or insisted on the trial upon damages that were inconsistent with the cause of action set out in the pleadings, would not furnish grounds to compel an election. Such evidence should, upon objection, have been excluded on the ground that there was no issue tendered by the pleadings that would justify its admission.

The court found that the defendants had countermanded the order, but this finding was erroneous for two reasons: They had contracted not to countermand the order without paying to the defendants the damages which such countermand would occasion, and the correspondence

31

shows conclusively that the defendants never attempted to countermand the order until after the delivery of the goods. The court found the general issue in favor of the plaintiff, but entered judgment for nominal damages only. Upon such finding the court should have allowed the plaintiff at least the contract price of the wagons, which would include the purchase price, with interest, and, upon proof of the payment of the freight by the plaintiff, would also include the freight charges from Lansing, Michigan, to Wilcox, Nebraska.

The contract provides for payment for the main part of the purchase upon six months' time, and for a discount, if paid sooner. The extras were purchased upon 60 days' time, as provided in the contract. This action was brought within 60 days after the delivery of the property on board the cars at Lansing, Michigan. It was prematurely brought, and for this reason should have been dismissed.

The judgment of the district court is reversed and the cause remanded, with instructions to dismiss the case without prejudice to a new action, and at the costs of the plaintiff.

REVERSED.