RAY A. CRANCER, APPELLANT, v. JOHN A. REICHENBACH ET AL., APPELLEES.

FILED MARCH 26, 1936. No. 29495.

*Harry R. Ankeny* and *Jay O. Rodgers*, for appellant.

*Perry, Van Pelt & Marti, H. W. Baird* and *Frank A. Peterson, contra.*

Heard before GOSS, C. J., ROSE, GOOD, EBERLY, DAY, PAINE and CARTER, JJ.

GOOD, J.

This is an action in tort to recover double damages for alleged conversion of trust funds. At the close of all the evidence, the trial court directed a verdict for defendants. Plaintiff has appealed.

In the petition are set forth 98 causes of action, each based upon a written contract between the Lincoln Trust Company and another. It is charged that each contract created a trust. Plaintiff was a party to one of the contracts, and the other contracts he claims to hold as assignee. In all material respects the contracts are identical. The defendants are officers and members of the executive committee of the Lincoln Trust Company which has been adjudged a bankrupt.

The Lincoln Trust Company created a department in its business for the handling and payment of life insurance premiums for customers, and designated the department as "eltelic." Contracts were prepared for the customers availing themselves of the service in this department. The contracts are identical in all material parts. In each the Lincoln Trust Company is designated as party of the first part and the customer as party of the second part. The following are the pertinent provisions of the contract:

"That said party of the second part is now carrying life insurance upon his life as follows (Here follows list of the

policies, date issued, amount of each, name of the company, due date of premium and amount thereof) * * *

"In consideration of the payment by said second party of the sum of $————, the receipt whereof is hereby acknowledged, and in further consideration of the covenants and payments hereinafter set out, the said Lincoln Trust Company, party of the first part, hereby covenants and agrees as follows:

"1. To pay unto each of the insurance companies hereinbefore named, at their respective offices òr to their duly appointed agents qualified to receive the same, the said annual premiums as heretofore set out, during the life of this contract and in accordance with the terms of the several policies, promptly as the same, respectively, shall fall due.

"2. To open on the books of said trust company an account in the name of said second party; to credit to said account the amount herein acknowledged as received from second party and all subsequent payments to be made by second party, as hereinafter set out; and annually on the ———— day of ———— (month) in each year hereafter, during the life of this contract, to credit to said account interest at the rate of five per cent. on the daily balances to the credit of said second party from month to month.

"And in consideration of the covenants and agreements of said first party, the Lincoln Trust Company, said second party agrees to pay the sum of $———— on the 1st day of each month hereafter to and including the month of (month and year), to said first party at its office * * * and each year thereafter during the life of this contract and the life of said policies of insurance, to pay to said first party on the 1st day of each month the sum of $———— * * *

"It is agreed by and between the parties hereto that if the second party shall fail and neglect to make the payments hereinbefore set out, at any time during the life of this contract, not having exercised the option hereinafter mentioned, then in such event first party shall have one of two options:

"(a)   If the balance to the credit of second party on the books of first party is sufficient to pay the next annual premium falling due, first party may pay such premium to the insurance company entitled to receive it, and charge the amount to the account of second party notwithstanding his laches; or

"(b)   First party may calculate interest up to the date current, close the account by mailing check or draft for the balance, if any, to second party, * * * declare the contract canceled and be acquitted and released from further liability hereunder."

Then follow a provision that second party may omit one or more monthly payments when the gains to his account from interest, dividends from the participating policies, overpayments or other gains, equal or exceed such monthly payments; a provision for terminating the contract upon the death of the second party and the payment of any balance to his account to the executor or administrator of the estate of second party, and a provision for terminating the contract by either party upon three months' notice, and, upon such termination, the first party to calculate interest to the date of such proposed termination and pay to second party the balance to the credit of his account.

It is plaintiff's theory that each of these contracts created a trust in which the trust company was the trustee; the customer was the trustor or creator of the trust, and the respective insurance companies were the beneficiaries; that the trust company, through its officers, directors and executive committee, diverted the funds paid in by the second parties and commingled and used the funds in the transaction of its business, and did not set apart the funds arising from the so-called "eltelic" contract in a separate trust, and, further, that, pursuant to a statutory provision, the defendants were liable for double damages.

Defendants admitted that the Lincoln Trust Company was a corporation organized as a trust company under the laws of Nebraska; admitted the existence of the "eltelic" department; the making of the several contracts, and the

amount that was to the credit of each of the second parties when the trust company was adjudged bankrupt; but denied that said contracts created, or were intended to create, a trust relation between the trust company and the parties. Defendants alleged that the second parties, or a great many of them, filed claims in the bankruptcy proceeding against the bankrupt trust company, wherein they designated their claims as debts due from the trust company; that thereafter they amended their claims to charge that the bankrupt trust company held the money of the second parties as a trust fund and sought the allowance of their claims as such, but later dismissed all of these proceedings and instituted the present action against the defendants as directors and members of the executive committee of the trust company.

Plaintiff was entitled to have his cause submitted to a jury if he made *prima facie* proof that trust funds, property of the plaintiff and his assignors, had been wrongfully converted by defendants. It was incumbent upon him to make a *prima facie* showing that a trust relation existed between the plaintiff and his assignors, on the one side, and the trust company, on the other, for, without a trust, there could be no trust funds to be converted.

Are the provisions of the so-called "eltelic" contract sufficient to create a trust? The contract appears to be in clear, explicit language and free from ambiguity. The applicable rule is stated in 13 C. J. 524, in this language: "The intention of the parties is to be deduced from the language employed by them, and the terms of the contract, where unambiguous, are conclusive, * * * the question being, not what intention existed in the minds of the parties, but what intention is expressed by the language used. When a written contract is clear and unequivocal, its meaning must be determined by its contents alone; and a meaning cannot be given it other than that expressed." Another applicable rule is that the construction of a written contract is a question of law for the court. *Peru Plow & Implement Co. v. Johnson Bros.*, 86 Neb. 428, 125 N. W. 595; *Hinman v. Austin Mfg. Co.*, 65 Neb. 187, 193, 90 N. W. 934;

*McCormick Harvesting Machine Co. v. Davis,* 61 Neb. 406, 85 N. W. 390. In the latter case it was held: "It is the duty of the court to interpret the contract between the parties."

It may be conceded that no particular words are needed to create a trust, but it is also true that to create a trust it must clearly appear that such was the intention of the parties. In the light of these rules, let us examine the contract.

In the whole of the contract there is no reference to the words "trust" or "trustee;" there is no reference to a deposit for a special or specific purpose; there is no agreement to hold the funds and invest them in a particular manner; there is no agreement to use the specific funds to pay the insurance premiums; in fact, the implication is that the trust company itself was to make the payments out of its funds. The contract provides for opening an account with each of the parties. It speaks of the payments which they are to make in consideration for the service to be performed by the trust company. By the payment of the sums, stipulated in the contract, to the trust company, it undertook to pay the premiums due from the parties to the several insurance companies as such premiums became due. The contract provides for the payment of interest to the customer of the trust company. The payment of interest to the customer upon the daily balance is a strong, though not conclusive, indication that title to the funds paid to the trust company passed to it, and that the relation between it and the customer was that of debtor and creditor. *In re State Bank of Elkhorn,* 129 Neb. 506, 262 N. W. 15.

It is highly improbable that the trust company would receive these funds from its customers, perform the service of paying the premiums to the insurance company when they became due, and pay interest to the customers upon their daily balances in its possession, without any recompense whatever. It seems clear that the parties contemplated that the trust company should use the funds in its possession so as to make them yield an income to the company. If it was not to do this, it would be in the anomalous

situation of taking the customer's money, holding it until premiums were required to be paid, perform all this service and pay for the privilege of so doing without any recompense whatever.

We are of the opinion that the contract was wholly insufficient to create a trust relation between the trust company and the plaintiff and its assignors.

Plaintiff insists that there is evidence, aside from the contracts, indicating a trust relation. But, since the language of the contract is clear and unambiguous, we think the question of whether a trust was created must be determined solely from the provisions of the contract. *State v. Board of County Commissioners of Cass County,* 60 Neb. 566, 83 N. W. 733; *Wheeler v. Moore,* 78 Neb. 484, 111 N. W. 120.

Since no trust relation between the plaintiff and the trust company is shown, there was no trust fund for defendants to convert to their own use. The district court properly directed a verdict for defendants.

AFFIRMED.