GEO. N. MECHAM, APPELLEE, V. JESSIE BEARD COLBY,
APPELLANT.

56 N. W. 2d 299

Filed January 2, 1953. No. 33221.

*Floersch & Floersch,* for appellant.

*Mecham, Stoehr, Moore, Mecham & Hills,* for appellee.

Heard before SIMMONS, C. J., CARTER, MESSMORE, CHAPPELL, WENKE, and BOSLAUGH, JJ.

MESSMORE, J.

This is an action brought in the district court for Douglas County by Geo. N. Mecham as plaintiff against Jessie Beard Colby as defendant to recover for legal services rendered the defendant.

The plaintiff's petition, insofar as necessary to consider here, alleged his employment as counsel for the defendant to protect her interests as principal beneficiary under her brother's will and any claim she might have against the Beard Wall Paper & Paint Company, Inc. The petition detailed the legal services rendered by the plaintiff for the defendant and the results obtained for defendant's benefit by virtue of such services; alleged that on December 13, 1946, the plaintiff rendered a bill for professional services to the defendant which was approved by her in writing and which she agreed to pay, in the amount of $2,000; and prayed judgment in the amount of $2,000 and costs expended.

The defendant's answer denied generally the allegations of the plaintiff's petition; set out facts that the legal services rendered by the plaintiff in behalf of the defendant were detrimental to her best interests; that the defendant was the principal beneficiary under the will of her brother Robert N. Beard, deceased, and by virtue of such fact had a claim against the Beard Wall Paper & Paint Company, Inc.; that the amount claimed by the plaintiff for legal services rendered the defendant is excessive and not the fair and reasonable value of said services; discloses the defendant approved the statement rendered by the plaintiff in the amount of $2,000

for services rendered and admits that she signed it; and prayed for dismissal of the plaintiff's petition and for recovery of costs expended in this action.

The factual particulars set forth in the pleadings will be more fully covered in a resume of the facts appearing in the opinion.

The plaintiff did not file a reply to the defendant's answer, but filed a motion to enter judgment in behalf of the plaintiff in the amount of $2,000 with interest thereon at the legal rate from December 13, 1946, and costs in accordance with sections 25-1330 to 25-1336, R. S. Supp., 1951. The motion for summary judgment was sustained, and judgment was entered in favor of the plaintiff in the amount of $2,000, interest, and costs in the amount of $60.45.

The defendant filed a motion for new trial which was overruled and defendant perfected appeal to this court.

For convenience we will refer to the parties as designated in the district court, Geo. N. Mecham as plaintiff, and Jessie Beard Colby as defendant.

We deem it advisable at this time to set forth certain statutory provisions of the summary judgment act and its effect.

Section 25-1330, R. S. Supp., 1951, provides: "A party seeking to recover in district court upon a claim, counterclaim, or cross-claim or to obtain a declaratory judgment may, at any time after the filing of answer or after service of a motion for summary judgment by the adverse party, move with or without supporting affidavits for a summary judgment in his favor upon all or any part thereof."

Section 25-1332, R. S. Supp., 1951, provides in part as follows: "The judgment sought shall be rendered forthwith if the pleadings, depositions, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that

the moving party is entitled to a judgment as a matter of law."

The foregoing statute is patterned after Rule 56 of the Federal Rules of Civil Procedure. See 28 U. S. C. A., Federal Rules of Civil Procedure, Rule 56, p. 153.

In considering a motion for a summary judgment the court should view the evidence in the light most favorable to the party against whom it is directed, giving to that party the benefit of all favorable inferences that may be reasonably drawn therefrom. See, Illian v. McManaman, *ante* p. 12, 54 N. W. 2d 244; Dennis v. Berens, *ante* p. 41, 54 N. W. 2d 259; Ramsouer v. Midland Valley R. R. Co., 135 F. 2d 101; Dulansky v. Iowa-Illinois Gas & Electric Co., 191 F. 2d 881.

The court examines the evidence on motion for summary judgment, not to decide any issue of fact presented in the case, but to discover if any real issue of fact exists. See, Dennis v. Berens, *supra;* Sprague v. Vogt, 150 F. 2d 795. In other words, the court can merely determine that an issue of fact does or does not exist. If such an issue does exist, the summary judgment act has no application; if such issue does not exist, a motion for a summary judgment affords a proper remedy. The evidence offered in support of the motion is for the purpose of showing that no issue of fact exists, not to try issues on pleadings, depositions, admissions, and affidavits which constitute only a part of the evidence available on a trial on the merits. The burden is upon the moving party to show that no issue of fact exists, and unless he can conclusively do so the motion for summary judgment must be overruled. See, Illian v. McManaman, *supra;* Dennis v. Berens, *supra,* and cases cited therein.

With the foregoing rules in mind we proceed to a determination of this appeal and the depositions and affidavits on file which in substance disclose the following: The Beard Wall Paper & Paint Company, Inc., was incorporated in 1917. We will refer to it as the corpora-

tion. Robert N. Beard, the brother of the defendant Jessie Beard Colby, was president of the corporation, the manager thereof, and held the controlling number of shares of stock therein. For convenience we will refer to Robert N. Beard as Beard.

It appears there were 300 shares of common stock outstanding, of which Beard owned 185 shares. Prior to 1939, and at that time, the corporation was in financial straits and operated at a loss. On November 8, 1939, an agreement was entered into by the corporation with three of its principal creditors by the terms of which a creditors' committee was formed to take over, manage, and have exclusive control of the business for the benefit of such creditors and other creditors of the corporation. The purpose of the agreement was to endeavor to pay the creditors and put the business on a profitable basis. The affairs of the corporation were complicated by the fact that Beard had been borrowing and using corporate funds for his own personal use, which appeared on the books of the corporation. On October 20, 1941, Beard died. At that time he owed the corporation $14,737.24, with interest in the amount of $7,342.33, making a total indebtedness to the corporation of $22,079.57, no part of which had been paid. At the time of Beard's death there were 300 shares of common stock of the corporation outstanding, of which he owned 185 shares. There was also preferred stock owned by another party. The indebtedness of the corporation at the time of Beard's death was $53,634.21. There was a life insurance policy on Beard's life in the amount of $32,000, the three principal creditors being the beneficiaries of the policy. This was applied on the corporation's outstanding indebtedness. The indebtedness of the corporation on current accounts as of the date of January 31, 1942, was $41,587.34. Had there been liquidation of the corporation at the time of Beard's death, the assets of the same would have been insufficient to pay the entire outstanding indebtedness. The common stock

of the corporation had little or no value.

On December 17, 1941, the defendant went to the plaintiff's office and employed him to represent her as her attorney with reference to the estate of her brother. She was the principal beneficiary under his will and would inherit the 185 shares of common stock in the corporation owned by him. By virtue of such fact she contended she had a claim against the corporation, and the plaintiff was instructed to protect her interests.

According to the defendant's deposition, the corporation was in financial straits in 1939. It had bought too heavily and was unable to sell its merchandise during the hard times and the crop failures; business dropped off and it was overstocked. The plaintiff agreed to act as the defendant's attorney to protect her interests in the estate of her brother and any claim she might have against the corporation. Thereafter the plaintiff had several conferences with the defendant and the officers of the creditors' committee, and corresponded with numerous individuals to ascertain the value of the common stock of the corporation, its indebtedness, and financial condition.

In April 1945, the Beard Wall Paper & Paint Company, Inc., as an alleged bona fide creditor, filed a petition in the county court of Douglas County for the administration of the estate of Robert N. Beard, deceased. Objections were filed to the petition for probate of the will for the reason that more than two years had elapsed since the death of Robert N. Beard. No hearing was had thereon, but negotiations for an amicable adjustment of the defendant's claim continued. The plaintiff acted as attorney for the defendant and the creditors' committee acted for the corporation. During the process of negotiations several offers were made to the defendant to obtain her interest in the corporation, one for $1,000, one for $3,000, and one for $5,000, all of which she refused. After the negotiations between the plaintiff, acting for the defendant, and the creditors' committee had

been in progress for a period of nearly five years, the financial status of the corporation improved until finally the creditors' committee ceased operation with reference to the management of the corporation and returned the business to its proper officers.

On October 3, 1946, an agreement in writing was had between the corporation and its proper officers and the defendant, brought about by the plaintiff, in settlement of defendant's claim against the corporation. According to the terms of this agreement, the defendant was to surrender 75 of the 185 shares of stock left to her by virtue of her brother's will for the cancellation of the debt owing by her brother to the corporation, not to be reissued by the corporation without the unanimous consent of the stockholders. This reduced the number of outstanding shares of common stock of the corporation to 225. The defendant retained 110 shares of common stock of the corporation. In addition, the corporation agreed to pay to the defendant $50 on the first day of each and every month commencing with the first day of February 1946, as an advance of dividends on the common stock held by her in the corporation. It was further agreed that the defendant should not participate in any manner in the management and daily operation of the business of the corporation.

As a result of this agreement, the defendant received a cancellation of her deceased brother's debt owing to the corporation in the amount of $14,737.24, with interest amounting to $7,342.33, or a total of $22,079.57, and the receipt of 110 shares of common stock valued at $28,260. She also received a monthly check for $50 for a period of 30 months, totaling $1,500, and thereafter, by the transfer of some stock to a person who was desirous of being president of the corporation, she received $150 each month, less withholding taxes and social security payments. It also appears that she received two dividend checks in the amount of $500 each, and it is not clear by the record whether or not these

dividend checks were prior to the time the agreement was entered into. The record indicates that this transaction was prior to that time.

Other affidavits appear in the record confirming the fact that the corporation operated at a loss prior to 1939, and at that time; that the indebtedness of Beard to the corporation was as heretofore indicated; and that the settlement perfected by the plaintiff with the corporation was the best possible settlement that was obtainable for the defendant. The reasonable value of plaintiff's services was placed by one attorney's affidavit as between $7,500 and $10,000.

There also appears in the record an affidavit of counsel for the corporation prior to and during 1939 who took part in the settlement of defendant's claim against the corporation, reiterating that the corporation was in financial straits at the time; that there was an indebtedness owing the corporation by the defendant's deceased brother; and that at the time of the settlement the defendant had a full and comprehensive knowledge of the terms of the agreement of October 3, 1946.

On December 13, 1946, the plaintiff rendered a bill to the defendant, he being a member of the firm of Rosewater, Mecham, Shackelford & Stoehr, for professional services rendered to date in the matter of her claim against the Beard Wall Paper & Paint Company, Inc., and the estate of Robert N. Beard, deceased, in the amount of $2,000. On the face of this bill appears the following: "Omaha, Nebraska December 13, 1946 The above and foregoing is approved. (Signed) Mrs. Jessie B. Colby."

On December 19, 1946, the following letter was sent by Mrs. Jessie B. Colby, defendant, to the firm of Rosewater, Mecham, Shackelford & Stoehr, 1028 City National Bank Building, Omaha, Nebraska, in which the plaintiff's attention was directed to the following: "This is to acknowledge receipt of your letter of December 16th together with three enclosures. Accordingly, reaffirming your letter and our former conversation in your

office, it is understood that your fee is $2,000.00 for all services and claims against me to December 13, 1946. In compliance with your letter, you also understand that your services will be discontinued until such time as I again request your services in writing, and that I am now at liberty to consult other counsel or attorneys in this regard. It was also understood that my brother's will and all papers pertaining to my case will be turned over to any other counsel I may select. Unless I heard (hear) from you to the contrary within the next five days, I will assume that this is correct. Sincerely, (signed) Mrs. Jessie B. Colby."

The deposition and affidavits of the defendant appearing in the record relate to the history of the Beard Wall Paper & Paint Compay, Inc., both before the corporation was formed and subsequent thereto, and that the corporation was in financial difficulty in 1939. The deposition and affidavits further admit the indebtedness of Robert N. Beard, president of the corporation, before his death to be in the amount of $14,737.24; however, that this amount was on an open and running account up to September 30, 1938, containing the private transactions of Robert N. Beard, and that the last item on the account was April 1, 1940. It was not contemplated or agreed that any interest should be paid on this indebtedness as shown by defendant's affidavit and the affidavit of one other person. The deposition and affidavits show that a creditors' committee was organized to manage and have exclusive control of the business of the corporation; and that defendant employed the plaintiff to represent her with reference to her brother's will and in any claims she might have against the corporation. After she had received the $50 each month for a period of 30 months, "some stock changed hands, and a man bought it * * * and he wanted to be President and he couldn't be President without my vote, so I just wanted to be Vice-President and get a salary, and that's the way I got a salary." As a consequence she drew $150 per month less with-

holding tax and social security, and has drawn the same ever since. Also, the deposition and affidavits show that she received two dividend checks in the amount of $500; that the building was mortgaged to pay the dividends and they could not leave her out; and that in accordance with the agreement of October 3, 1946, she was required to surrender 75 shares of common stock to liquidate the debt of her brother to the corporation. By doing so she was divested of controlling shares of stock in the corporation to her detriment. The business was valued at that time at approximately $79,000, and the 75 shares of stock she surrendered to pay an indebtedness of $14,-737.24, were of the value of $20,000.

One of defendant's affidavits is also to the effect that the balance sheet of the corporation as of July 31, 1942, showed a deficit of $6,708.53 on that date. The real estate and fixtures were shown at far less than the actual value, and the balance sheet showed a surplus of $15,650.45. In 1948, the building owned by the business was appraised in the amount of $42,000. Further, when she signed the agreement of October 3, 1946, she was very ill and was advised by the plaintiff that if she did not sign the agreement she would lose everything she had and the corporation stock would be worthless. She was continually advised by the plaintiff that nothing could be done by her until such time as the creditors of the corporation were taken care of.

There is an affidavit of an accountant who examined the balance sheet for the corporation for the year ending July 31, 1942, and estimated the book value of the stock on that date as shown by the balance sheet at $100 per share. He further examined the balance sheet for the fiscal year ending July 31, 1946, and from an analysis thereof formed the opinion that the book value of the stock at that time was $265 per share, basing the number of outstanding shares at 300; and that during the month of January 1947, he was present in the offices of the corporation when he was told by Martin Her-

skind and Gage Billings, who were in charge of the business, that there had been no agreement at any time between Robert N. Beard and the corporation for payment of interest on the open account of Beard with the corporation.

It also appears from the defendant's deposition and affidavits that the acknowledgment of the indebtedness to the plaintiff for legal services rendered was prior to the time she was advised of the true facts concerning the agreement dated October 3, 1946, and the actual value of the 75 shares of stock surrendered by her in the settlement of her brother's debt to the corporation, which value was in excess of the amount of the debt. It was then that she first realized that the amount of the bill rendered by the plaintiff for legal services in her behalf was not the fair and reasonable value of the services rendered by him. That the services rendered by the plaintiff were detrimental to her best interests in that it left her entire inheritance tied up in an investment over which she had no control and which she could not readily liquidate, and she was left to the mercy of the holders of the controlling stock of the corporation, therefore the charges made were not fair and reasonable.

It is apparent that the defendant approved the written statement of the plaintiff for his charge of $2,000 for attorney fees. This constitutes a contract between the parties. By the defendant's letter of December 19, 1946, she reaffirmed the contract, stating she would hold the plaintiff to the terms thereof. The plaintiff's promise under the contract was to accept $2,000 for the services rendered. A consideration for the defendant's promise to pay was the service which the plaintiff had rendered to the defendant, and the consideration for that service was the promise of the defendant to pay the plaintiff his fee of $2,000. It is apparent that this was sufficient consideration for a contract.

It is defendant's contention that the records disclose

a genuine issue of fact which requires a trial to be had on the merits of the case as to what the reasonable value of the services rendered by the plaintiff to the defendant would amount to.

The defendant assigns as error that the court erred in finding from the pleadings, affidavits, and depositions on file that there was no genuine issue as to any material fact in this case, and that the plaintiff was entitled to a judgment as a matter of law.

"When the provisions of a contract together with the facts and circumstances that aid in ascertaining the intent of the parties thereto are not in dispute, the proper construction of such contract is a question of law." Kimball v. Cooper, 134 Neb. 536, 279 N. W. 194. See, also, Western Mfg. Co. v. Rogers, 54 Neb. 456, 74 N. W. 849.

"The construction of a written contract, if couched in clear, unambiguous language, is a question solely for the court." Crancer v. Reichenbach, 130 Neb. 645, 266 N. W. 57. See, also, Peru Plow & Implement Co. v. Johnson Bros., 86 Neb. 428, 125 N. W. 595; Hinman v. Austin Mfg. Co., 65 Neb. 187, 90 N. W. 934; McCormick Harvesting Machine Co. v. Davis, 61 Neb. 406, 85 N. W. 390. In the latter case it was held: "It is the duty of the court to interpret the contract between the parties." See, also, Martin v. Reavis, 117 Neb. 219, 220 N. W. 238.

There appears from the record a clear promise on the part of the defendant to pay the plaintiff attorney fees in the amount of $2,000. The employment of the plaintiff is admitted, and it is admitted that the defendant has never paid the attorney fees. Defendant attempted to justify her failure to keep her promise to pay the attorney fees by stating that the agreement she entered into on October 3, 1946, heretofore mentioned, was not for her best interests and was a detriment to her. This is not relevant. The defendant accepted the terms of the contract of October 3, 1946, and took the benefits received therefrom.

Under the authorities heretofore cited with reference

to the summary judgment act, we conclude that no genuine issue of fact is presented in this case, and the plaintiff was entitled to a summary judgment as rendered by the trial court.

AFFIRMED.