SOUTHWESTERN TRUCK SALES AND RENTAL COMPANY, A CORPORATION, APPELLANT, V. H. L. JOHNSON, APPELLEE.

85 N. W. 2d 705

Filed November 8, 1957. No. 34207.

*Torgeson, Halcomb & O'Brien* and *John D. Knapp,* for appellant.

*Martin, Davis & Mattoon* and *Gerald E. Matzke,* for appellee.

Heard before SIMMONS, C. J., CARTER, MESSMORE, YEAGER, CHAPPELL, WENKE, and BOSLAUGH, JJ.

SIMMONS, C. J.

Plaintiff brought suit on a contract allegedly dated April 14, 1954, alleging that there was due and owing to it from the defendant the sum of $14,683.84 after allowance of $4,768.40 which it alleged had been paid. Defendant's answer, subject to admissions, was a general denial.

Defendant further alleged that he had entered into a contract with the plaintiff; pleaded fraud and misrepresentation and that the contract did not represent the intent of the parties; and alleged that a parol contract of purchase was entered into in April and May of 1954, that there were misrepresentation and damages, that there was a subsequent modification of the parol contract, and that on or about November 1, 1955, plaintiff repossessed the property which was the subject of the parol contract and prevented performance by the defendant. Defendant sought recovery on a counterclaim which is not involved in this appeal. The reply was, in effect, a general denial except as to admissions consistent with the allegations of the petition.

Trial was had on the issues. At the close of the

plaintiff's case-in-chief, the defendant moved for dismissal or a directed verdict based on some 12 different reasons.

The trial court sustained the motion. In its journal it made a finding that the contract offered in evidence was a conditional sales contract and not a lease; that the plaintiff had repossessed the equipment covered by the contract; and that the plaintiff had waived its right to recover past due or future accruing payments. The court further found that the motion of defendant should be sustained and dismissed the petition with costs taxed to the plaintiff.

Plaintiff appeals. We affirm the judgment of the trial court.

Plaintiff is an Arizona corporation. It alleged a contract with "H. L. Johnson." It attached to the petition and made a part thereof a contract bearing the title "Truck and Accessory Lease" entered into with "H. L. Johnson, a corporation, Lessee." The contract offered in evidence shows that "H. L. Johnson" was typed into a mimeographed form. The contract thereafter refers to the lessee. It is signed by "H. L. Johnson" over the mimeograph title "President." Below the signatures of the parties is a "Guarantor Statement" signed by "H. L. Johnson, Owner."

The motion above referred to presented the question that H. L. Johnson individually was not a proper party defendant and not individually liable. It is not argued here. Both parties assume that Johnson is a proper party defendant. Without deciding that question we proceed, on that assumption of the parties, to the other issues presented.

Plaintiff alleged a contract dated April 14, 1954. The copy attached and made a part of the petition bears the date of June 21, 1954. The contract offered in evidence bears the date of April 14, 1954. It was "acknowledged" by the plaintiff's officers on June 14, 1954, and by "H. L. Johnson" on May 20, 1954. The contract pleaded

provided for a "lease * * * period of 2 years from the date hereof." The contract offered in evidence provided for a "lease * * * period of three years from the date hereof."

Prior to the trial plaintiff was required by court order to furnish the defendant a copy of the "conditional sales" contract. Defendant, on cross-examination of a plaintiff witness, introduced a copy of the contract for "purposes of comparison" only. On this copy the date "14" is lined through in pencil and "21" written above. Above "April" is written "June" in lead pencil. Above "three" is written "2". Plaintiff's witness testified that these changes were made on an office copy by an employee for the purpose of knowing when to start and when to stop sending bills.

It appears then that the contract copy attached to the petition, both as to date and one material term, was not the contract signed by the parties.

One further preliminary fact requires statement. It appears from the evidence that a Mr. Bogard owned and controlled two corporations — "Bogard GMC" and the plaintiff corporation. Bogard GMC was an "owning" corporation and plaintiff was a "leasing" corporation.

Chronologically the evidence shows the development of this controversy. Sometime in April of 1954 defendant desired to purchase some oil field equipment and discussed his needs with one Goffinett, an employee of the Ferguson Trucking Company of Fort Morgan, Colorado. Ferguson desired to sell three pieces of motor-driven equipment. Goffinett advised defendant of that fact and sent one Turner, an employee of plaintiff, to the defendant. Turner and defendant discussed the leasing of the Ferguson equipment and two "floats" which were then in New Mexico. Apparently Bogard GMC was to buy the equipment from Ferguson and plaintiff was to "lease" it to defendant. There is no showing as to how or from whom the other two pieces were to be acquired.

Turner started with the calculation that the five pieces of equipment had a valuation of $19,000. To determine the "rental price" he started with that value and calculated handling charges, interest, and carrying charges.

Mr. Bogard said that the rental basis was the fee "of which we have to pay— * * * plus a reasonable mark up of profit," and interest rates on money, and that those things determined the cost of the lease. Mr. Bogard further testified that at the end of a 2-year period this sort of equipment was usually "used up pretty muchly" so as to have no particular value.

Turner testified that in the April negotiations he told defendant that at the end of the 24-month period he had the option to purchase the equipment for 5 percent of the original selling price. Such a provision was not in the contract and is negatived by a general provision in the pleaded contract.

In April 1954, Turner calculated the "rental" charges for a 2-year period at $1,062.40 per month. Defendant at that time gave Turner a postdated check for $1,062.40 marked "Rent on Truck." That check was not paid when presented.

Turner then went to the plaintiff's home office at Tuscon, Arizona, and prepared the contract, in multiple number on mimeographed forms, which was admitted in evidence. This contract called for the payment of $25,936.40 payable $1,080.68 in cash and the balance payable $1,080.68 monthly commencing on the same day of the month "until the total sum hereunder is paid in full." Turner explained that the "$20.00" difference in payments was due to his failure to include a "rent tax" in his calculations.

This contract and copies were sent to Goffinett who took them to the defendant and secured his signature in May 1954. They were then sent to the plaintiff in Arizona where ultimately they were approved and executed by plaintiff's officers on June 14, 1954.

In June 1954 defendant paid the plaintiff, in cash and by check, $1,080.68, the original check not having been paid. Plaintiff gave defendant credit for this payment on June 19, 1954. Just when this equipment was delivered to the defendant does not appear. Neither does it appear as to whether plaintiff retained title or transferred title to defendant. It does appear that in May 1954 defendant was having trouble with the serviceability of one of the trucks. Plaintiff authorized its repair and on June 22, 1954, plaintiff gave defendant credit for $800 on the repair bill. Defendant paid $1,080 in October 1954 and again the same amount in November 1954. Defendant paid $500 in August 1955, and in September 1955, $227.04 was paid to plaintiff by a Fort Morgan bank. The facts of this payment do not appear in the record.

· This brings us to the plaintiff's first assignment of error and that is that the trial court erred in holding that the contract proven was a conditional sales contract.

Plaintiff points to 11 alleged provisions of the contract: 1. The title as a "Truck and Accessory Lease." 2. The denomination of the parties as "lessor" and "lessee." 3. The provision that in consideration of the payment of $25,936.40 the "lessor does hereby *lease* unto the lessee." 4. The nonexistent provision of the lease (as pointed out earlier) "for the period of 2 years from the date hereof." 5. The lessee may add accessories and remove them before returning them to the lessor. 6. The lessee agreeing to maintain the vehicles. 7. The lessor has the right of inspection at all reasonable times. This provision is followed by this: "* * * lessor will provide free inspection to the lessee upon the latter's request at reasonable times." 8. A provision that the lessee will not sell or attempt to sell, mortgage, or otherwise dispose of the vehicles. 9. A provision that the lessee may release subject to conditions imposed. 10. A provision that lessee will not remove the vehicles from the state "without the

written consent of the lessor * * *." 11. A provision that the lessee will surrender the vehicles to the lessor "at the end of this lease." As above pointed out, the contract provides no terminal date.

Defendant points to those alleged provisions in the contract contending that it contains no provision allowing defendant to return the vehicles before the full amount of $25,936.40 has been paid and that it requires the payments until the total sum has been paid "in full"; that it requires the lessee to keep the property insured covering lessor's and lessee's interests; that in the case of total loss lessee agrees to pay the unpaid balance not covered by insurance and, if the insurance exceeds the balance due on the contract, the excess is to "enure" to the lessee; and that in the event of default of the lessee the vehicles may be retaken "or the full amount hereunder becomes due and payable at the option of the lessor * * *."

Plaintiff argues that it is entitled to every reasonable inference that can be drawn from this record. Plaintiff further argues that the practical construction of the contract by the parties controls and points out that defendant wrote "Rent on Truck" on the postdated check given in April 1954. The evidence is that at that time the parties were discussing a "lease." However, the contract here involved was not prepared nor executed at that time. Plaintiff points to the testimony of Turner that he had forms of the contract with him and showed them to defendant at the April meeting. Accepting that as true, defendant was shown a contract that had a lease provision "for the period of three years" in the mimeographed form. As pointed out, that provision and the amount of the stipulated monthly payments (and of necessity the total payment), were changed when the contract was prepared by plaintiff and executed by the parties. Defendant contends that the contract is to be construed most strongly against the party that drafted it.

Threaded through plaintiff's argument is the premise that this contract was a lease for a 2-year period and that the defendant agreed to surrender the vehicles to the plaintiff at the end of the 2-year period. As pointed out, the contract provides no terminal date for the lease. It does, however, provide a fixed period during which payments are to be made and when they are to terminate.

We start with two basic rules:

Contracts must receive a reasonable construction, so as to give effect to the intention of the parties thereto and carry out, rather than defeat, the purpose for which they were executed. Gallagher v. Vogel, 157 Neb. 670, 61 N. W. 2d 245.

When the provisions of a contract together with the facts and circumstances that aid in ascertaining the intent of the parties thereto are not in dispute, the proper construction of such contract is a question of law. Mecham v. Colby, 156 Neb. 386, 56 N. W. 2d 299.

In Landis Machine Co. v. Omaha Merchants Transfer Co., on rehearing, 142 Neb. 397, 9 N. W. 2d 198, we held:

"Under a conditional sales contract each party has certain property interests in the goods less than complete and absolute ownership. The right of the seller to collect the price is the principal thing; the reservation of title, the secondary thing. The reservation of title is not absolute but for the limited purpose of collecting the price. * * * The vendor under a conditional sales contract retains title solely for security; other attributes of ownership as possession, use, control, or right thereto under such a contract belong to the vendee."

What, then, is this contract in substance? We start with the fact that the vehicles involved had a value of $19,000. Plaintiff added thereto the various items enumerated above and came up with the total amount that was to be paid to it at the rate of $1,080.68 "until the total sum hereunder is paid in full."

Plaintiff cites our holding in Baker v. Priebe, 59 Neb. 597, 81 N. W. 609, that: "If a person secures a profitable

bargain in the hiring of personal property, no different application of legal principles is to be made on that account." Prior to that we said: "It is urged that the rental for the property is so great as to indicate a conditional sale. We do not so regard it. This might be true, if, with other facts or circumstances, a sale could be inferred; but, standing alone, the fact possesses no value for that purpose."

What are the other facts and circumstances? Plaintiff struck out of the contract the provision fixing a period for the termination of the lease. Its concern was the getting of the fixed and stipulated payments. It required the defendant to insure the property for the benefit of the plaintiff and defendant "as their interest may appear." Defendant agreed to pay to the plaintiff any loss or damage not covered by insurance. In the event of total loss the defendant guaranteed the payment of "the unpaid balance." If the insurance exceeded that "unpaid balance" the excess was to "enure" to the defendant. In the event of a default by the defendant, plaintiff had the right to retake the vehicles "or the full amount hereunder becomes due and payable at the option of the lessor."

Clearly the right of the plaintiff to collect the price was the "principal thing" provided in this contract. In this connection see Motor Power Equipment Co. v. Park Transfer Co., 188 Minn. 370, 247 N. W. 244.

The plaintiff further agreed to provide the defendant "with all necessary instruments for the procurement of licenses, operational permits, etc., incidental to the operation of said vehicles * * * at the expense of" the defendant. Clearly the plaintiff agreed to provide the defendant with those indicia of ownership which would enable him to procure licenses, operating permits, etc. At best it was a conditional reservation of title. The right to possession, use, control, and instruments of title for the purpose above recited were by the contract vested in the defendant.

The trial court did not err in holding this to be a conditional sales contract.

This brings us to the contention that the trial court erred in holding that the plaintiff by retaking possession of the property had waived its right to recover payments.

It is urged that such is an affirmative defense, and must be pleaded. Defendant alleged that on or about the first day of November 1955, plaintiff "did * * * repossess and take possession of all of the vehicles and equipment * * *." The sufficiency of the allegation was not challenged in the trial court. We see no merit in the contention.

We have pointed out that under the terms of the contract in the event of default of payment, the plaintiff had the right to retake the property "or" the full amount became due and payable at plaintiff's option. The remedy of the plaintiff was fixed by the contract.

Plaintiff filed its petition on November 30, 1955, in which it sought to recover the balance then due on the contracted payments, beginning with June 1954, the date of the execution of the contract by the plaintiff.

Plaintiff repossessed the vehicles. Goffinett testified that: "It was in November" 1955. Mr. Bogard testified that the vehicles were repossessed on his order: "I have in mind around the first part of November" 1955.

Plaintiff rested. The motion to dismiss was made asserting, as one ground, that plaintiff had repossessed the vehicles. Plaintiff then withdrew its rest and offered a witness who testified that on December 2, 1955, representing the plaintiff, he went to Fort Morgan, conferred with defendant and "suggested" that he turn the vehicles back in order to halt the accrual of monthly payments and that all of the vehicles were at that time in defendant's yard.

Plaintiff contends that, if this is a conditional sales contract, and having brought suit for accrued rentals,

it thereby made a binding election to look to the contract and vested title in the defendant and, title having vested in the defendant, it cannot be divested by a later change of possession to the plaintiff.

Plaintiff claims, then, the right to recover three-fourths of the stipulated payments under the contract and then repossess all of the property involved. Plaintiff seeks to exercise in part both remedies.

It will be noted that Goffinett and Bogard were testifying as to facts which they knew, i.e., the date of repossession and in accord with the allegations of the defendant's answer. The witness was testifying to the facts that he knew which, however, were only a foundation for a conclusion contrary to that of the Goffinett and Bogard direct evidence.

We have held that: "A party is entitled to the benefit of the testimony of other witnesses in contradiction of his own, wherever his own is not of the character of a judicial admission, and concerns only some evidential or constituent circumstances of his case." Rueger v. Hawks, 150 Neb. 834, 36 N. W. 2d 236.

Was the testimony of Goffinett, and particularly Bogard, in the nature of a judicial admission?

That question has been answered in Tennes v. Tennes, 320 Ill. App. 19, 50 N. E. 2d 132, to the effect that where a party testifies clearly and unequivocally to a fact which is within his own knowledge, such testimony may be considered as a judicial admission. That rule has particular application where, as here, the parties so testifying made no effort to retract, qualify, or otherwise explain the positive force of their own evidence. See 31 C. J. S., Evidence, § 381, p. 1173. See, also, 32 C. J. S., Evidence, § 1040, p. 1110; 20 Am. Jur., Evidence, § 1181, p. 1032.

We conclude that the evidence of the witness is ineffective to overcome the testimony of Goffinett and Bogard.

We reach the same conclusion even on the premise

advanced by the plaintiff. In Star Drilling Machine Co. v. Richards, 272 Pa. 383, 116 A. 309, 23 A. L. R. 1460, there was a conditional sale of machinery for which payments were to be made in part by installments with a right of repossession in case of default. Default in a payment was made. Suit was brought to recover on a note given for one of the payments. Thereafter plaintiff repossessed the property. The court held: "The only question we need consider is whether or not the retaking of the machinery operated to relieve defendant from liability on his endorsement. The court below held this would have been the effect if it had been taken by plaintiffs before suit was brought, but, since the fact was otherwise, a different result obtained. We know of no principle or authority which sustains this supposed distinction. It would be a sad reflection on any system of jurisprudence, if it permitted a litigant, who was entitled to either one of two inconsistent recoveries, but not to both, to ultimately obtain both, merely by his order of procedure in relation to the matter. 'Equity, which is part of the common law of Pennsylvania, never would permit liability to depend upon the option of one party to a controversy, instead of upon legal principles applicable to all concerned' * * *."

The holding is stated in 78 C. J. S., Sales, § 600, p. 352, that: "In the absence of statute or of some provision in the contract to the contrary, a conditional seller of goods who repossesses the property sold may not thereafter recover the unpaid purchase money. * * * The operation of the rule is not affected by the fact that the retaking of the property was * * * after suit had been commenced to enforce the payment of the purchase price, * * *." See, also, Fredrickson v. Schmittroth, on rehearing, 77 Neb. 724, 112 N. W. 564, where a like result was affirmed.

The judgment of the trial court is affirmed.

AFFIRMED.