ANGELA BRODINE, APPELLANT, V. BLUE CROSS BLUE SHIELD
OF NEBRASKA, APPELLEE.

724 N.W.2d 321

Filed December 8, 2006.    No. S-05-712.

Phillip G. Wright, of Wright & Associates, for appellant.

John F. Thomas, of McGrath, North, Mullin & Kratz, P.C., L.L.O., for appellee.

WRIGHT, CONNOLLY, GERRARD, STEPHAN, McCORMACK, and MILLER-LERMAN, JJ.

WRIGHT, J.

## NATURE OF CASE

The plaintiff sued her health insurance provider for benefits the provider had denied. The district court sustained the defendant's summary judgment motion and dismissed the plaintiff's action as time barred due to the running of a 3-year limitations period in the contract. The plaintiff appealed.

## SCOPE OF REVIEW

Summary judgment is proper when the pleadings and evidence admitted at the hearing disclose that there is no genuine issue as to any material fact or as to the ultimate inferences that may be drawn from those facts and that the moving party is entitled to judgment as a matter of law. *Riesen v. Irwin Indus. Tool Co., ante* p. 41, 717 N.W.2d 907 (2006). In reviewing a

summary judgment, an appellate court views the evidence in the light most favorable to the party against whom the judgment is granted and gives such party the benefit of all reasonable inferences deducible from the evidence. *Id.*

The determination of which statute of limitations applies is a question of law that an appellate court must decide independently of the conclusion reached by the trial court. *Carruth v. State*, 271 Neb. 433, 712 N.W.2d 575 (2006).

## FACTS

Angela Brodine was insured under a group policy of health insurance issued by Blue Cross Blue Shield of Nebraska (Blue Cross). The operative "Master Group Contract" issued to Brodine's employer contained the following provisions concerning procedures for filing claims under the policy:

A. NOTICE OF CLAIM/PROOF OF LOSS: A Covered Person must notify [Blue Cross] when they have received health care Services for which this Contract will pay benefits. This notice is called a claim. The claim must give written proof of the Services provided. The claim may be filed directly by the Covered Person, the Hospital, the Physician or whoever provided the Service. . . .

B. TIME LIMIT FOR FILING A CLAIM: A claim should be filed within 90 days of the time the Services are provided, or as soon thereafter as is reasonably possible. If the claim is not filed within 18 months of the date of service, and it was reasonably possible to do so, benefits will not be paid.

The contract also contained the following limitations provision:

LEGAL ACTIONS: The Employee/Member cannot bring a legal action to recover under the Contract for at least 60 days after written proof of loss is given to [Blue Cross]. The Employee/Member cannot start a legal action after three years from the date written proof of loss is required.

Brodine had been issued a certificate of coverage in the form of a booklet entitled "A Guide to Your Blue*Preferred* Health Benefits." The booklet was designed to help participants understand their coverage under the group policy. Participants were

admonished that the booklet contained "only a partial description of the benefits, exclusions, limitations, and other terms of the Master Group Contract to which [the booklet] refers. It describes the more important parts of that document in a general way. . . . The Master Group Contract controls the coverage for your group." (Emphasis omitted.) The booklet described the limitations period in the following manner: "A lawsuit may not be filed less than 60 days after the claim is filed; nor more than three years from the time the claim is required to be filed."

Brodine received various medical treatments from January 9 to May 7, 1999, and her health care providers filed claims for services. Blue Cross denied the claims because it alleged the treatments were fertility related and therefore excluded by the terms of the policy and because the treatments were not medically necessary. By July 2, all claims for services at issue in this case had been processed by Blue Cross.

Brodine filed suit against Blue Cross in the U.S. District Court for the District of Nebraska on April 23, 2002. She sought recovery under the Employee Retirement Income Security Act of 1974 (ERISA), see 29 U.S.C. § 1001 et seq. (2000 & Supp. III 2003), for the benefits Blue Cross had denied. Upon a joint motion of the parties, the action was dismissed on November 25. The insurance policy had been issued for employees of the Nebraska State Education Association/Omaha Public Schools, a political subdivision. Because political subdivisions were not subject to ERISA, the parties questioned whether the federal court had jurisdiction.

On December 22, 2003, Brodine filed suit against Blue Cross in the district court for Douglas County. Blue Cross asserted that Brodine's claim was time barred by the 3-year limitations period set forth in the contract as described above. Blue Cross moved for summary judgment, and the court sustained this motion and dismissed Brodine's action. The court concluded that the appropriate limitations period was 3 years plus 18 months. The court also held that the limitations period was not tolled during the pendency of the federal lawsuit. Because May 7, 1999, was the last date on which Brodine had received medical treatments, the court determined that she was required to file her action no later than November 7, 2003, or 3 years 18 months from May 7, 1999.

Brodine timely appealed, and this court moved the appeal to its docket on its own motion, in accordance with the court's authority to regulate the caseloads of the appellate courts of this state. See Neb. Rev. Stat. § 24-1106(3) (Reissue 1995).

## ASSIGNMENT OF ERROR

Brodine claims, summarized and restated, that the district court erred in granting Blue Cross' motion for summary judgment.

## ANALYSIS

The issues are whether the 3-year limitations period set forth in the group policy was enforceable and, if so, when such period commenced. In opposition to Blue Cross' motion for summary judgment, Brodine asserted that the 3-year limitations period was unenforceable because it conflicted with the general 5-year statute of limitations for actions on written contracts, Neb. Rev. Stat. § 25-205(1) (Reissue 1995). The court held that the 3-year limitation in the contract was enforceable and that Brodine had 3 years plus 18 months from the last date of medical treatment to file her action.

On appeal, Brodine makes three arguments. She claims that the general 5-year statute of limitations should apply, which would make her action timely filed. Alternatively, if the 3-year contractual limitations period applies, then Brodine argues that the limitations period began to run on January 2, 2001, or 18 months from July 2, 1999. Such conclusion would mean that Brodine could file her lawsuit no later than January 2, 2004, in which case her action would have been timely filed. Finally, she argues that the federal lawsuit tolled the applicable limitations period. We will address Brodine's contentions in that order.

### APPLICABLE LIMITATIONS PERIOD

The determination of which statute of limitations applies is a question of law that an appellate court must decide independently of the conclusion reached by the trial court. *Carruth v. State*, 271 Neb. 433, 712 N.W.2d 575 (2006). The general statute of limitations applicable to actions on written contracts is found in § 25-205, which provides a 5-year limitations period on written contracts. See *Dutton-Lainson Co. v. Continental Ins.*

*Co.*, 271 Neb. 810, 716 N.W.2d 87 (2006). In Neb. Rev. Stat. § 44-357 (Reissue 2004), the Legislature has provided that

> [n]o insurance company shall issue in this state any policy or contract of insurance containing . . . any provision limiting the time within which an action may be brought to less than the regular period of time prescribed by the statutes of limitations of this state, *unless otherwise prescribed by this chapter.*

(Emphasis supplied.) Therefore, we examine the provisions of chapter 44 of the Nebraska Revised Statutes to see if a lesser time period for commencing an action is allowed.

Under Nebraska law,

> each policy of [individual] sickness and accident insurance . . . shall contain the provisions specified in this section . . . except that the insurer may, at its option, substitute for one or more of such provisions . . . which are in each instance not less favorable in any respect to the insured or the beneficiary.
>
> . . . .
>
> (7) A provision as follows: PROOFS OF LOSS: Written proof of loss must be furnished . . . within ninety days after the termination of the period for which the insurer is liable and in case of claim for any other loss within ninety days after the date of such loss. Failure to furnish such proof within the time required shall not invalidate nor reduce any claim if it was not reasonably possible to give proof within such time and if such proof is furnished as soon as reasonably possible and in no event, except in the absence of legal capacity, later than one year from the time proof is otherwise required.
>
> . . . .
>
> (11) A provision as follows: LEGAL ACTIONS: . . . No such action shall be brought after the expiration of three years after the time written proof of loss is required to be furnished.

Neb. Rev. Stat. § 44-710.03 (Reissue 2004).

A group health insurance policy like the one at issue may contain contractual limitations periods so long as they are not

"less favorable to the insured than would be permitted" under § 44-710.03. See Neb. Rev. Stat. § 44-767 (Reissue 2004). Thus, Nebraska law permits contractual limitations prohibiting legal actions more than 3 years after the time written proof of loss is required to be furnished. The group policy required that a claim be filed with Blue Cross within 18 months of the date of service, and no legal action could be started after 3 years from the date written proof of loss was required.

In *Rhodes v. Continental Ins. Co.*, 180 Neb. 10, 141 N.W.2d 415 (1966), this court held that the general statute specifying a 5-year limitations of actions on written contracts, § 25-205, yielded to a 1-year limitation period in a fire insurance policy, because such contractual provision was authorized by the statutes regulating fire insurance policies. In similar fashion, we conclude in this case that the general 5-year statute of limitations must yield to the 3-year provision in the Blue Cross policy because such provision is authorized by the statutes regulating health insurance policies.

The U.S. Court of Appeals for the Eighth Circuit faced the same issue arising from a similar contractual limitations period in *Duchek v. Blue Cross and Blue Shield of Neb.*, 153 F.3d 648 (8th Cir. 1998). In that case, the claimant filed an ERISA action in 1996 for benefits Blue Cross had denied in 1991. Although the claimant's lawsuit would have been timely filed under § 25-205, Blue Cross moved for summary judgment and argued that the action was time barred due to the 3-year limitations period established by the policy. The trial court concluded that the claim was time barred by the insurance policy provision requiring that an action challenging a claim denial be filed within " 'three (3) years from the date written proof of loss is required.' " *Duchek*, 153 F.3d at 649. The action was dismissed, and the Eighth Circuit affirmed the trial court's order. The appellate court looked to state law because ERISA contained no statute of limitations for actions to recover plan benefits. The court determined that the 3-year limitations period set forth in the policy was valid under the Nebraska insurance statutes.

The court explained its determination as follows:

> The Plan in question is a group sickness and accident insurance policy governed by Chapter 44 of the Nebraska

Statutes. *See* Neb.Rev.Stat. § 44-760. An individual sickness and accident policy *must* contain a provision prohibiting legal actions "after the expiration of three years after the time written proof of loss is required to be furnished." *See* Neb.Rev.Stat. § 44-710.03(11). A group policy *may* contain such a contractual limitation period if it is not "less favorable to the insured than would be permitted" under § 44-710.03(11). Neb.Rev.Stat. § 44-767. The Plan's contractual limitation is precisely that authorized in § 44-710.03(11); therefore, it is expressly permitted by § 44-767. This contractual limitation is not prohibited by § 44-357 because that statute does not apply if the contractual limitation is "otherwise prescribed *by this chapter*," in other words, by another section of the Nebraska insurance laws.

*Duchek*, 153 F.3d at 650. The Eighth Circuit correctly determined that the 3-year contractual limitation was not prohibited by the general 5-year statute of limitations for contract actions, § 25-205. See § 44-357.

Brodine argues that *Wineinger v. United Healthcare Insurance Co.*, No. 8:99CV141, 2001 WL 688530 (D. Neb. Mar. 13, 2001) (unpublished opinion), supports her contention that the general 5-year statute of limitations should apply in this case. We disagree. The plaintiff in *Wineinger* brought an action against her insurance provider alleging she had paid a higher percentage of copayments than had been required under the group policy. The group policy at issue contained a 3-year limitations period running from the date written proof of loss was required to be furnished, as permitted by §§ 44-767 and 44-710.03(11). Despite this provision, the trial court found that Nebraska's general 5-year statute of limitations applied and that §§ 44-767 and 44-710.03(11) were inapplicable because the plaintiff's action concerned copayments under the group policy, and not an administrative denial of a claim for benefits.

We do not consider the federal court's interpretation of Nebraska law in *Wineinger* because that case is distinguishable from the case at bar. Brodine sued Blue Cross because it had denied her claims for benefits, not because of a dispute over copayments.

We conclude that the 3-year limitations period set forth in the Blue Cross policy was enforceable under Nebraska law.

### DATE ON WHICH LIMITATIONS PERIOD BEGAN TO RUN

Having determined that the 3-year contractual limitation was enforceable, we turn to the question of when the 3-year limitations period commenced. Brodine argues that the period would commence on January 2, 2001, or 18 months from July 2, 1999, the date on which her claims were processed and denied by Blue Cross. However, the contractual provisions of the policy do not support Brodine's argument that July 2, 1999, was significant for determining when the 3-year period commenced. The Master Group Contract provided that an insured could not "start a legal action after three years from the date *written proof of loss* is required." (Emphasis supplied.) Thus, we must determine when Brodine was required to provide "written proof of loss" under the policy.

To receive benefits under the policy, an insured who received medical treatment was required to file with Blue Cross a "claim" containing "written proof of the Services provided." A "claim" could be filed by the insured or directly by the health care provider, as occurred in Brodine's situation. We conclude that the date on which "written proof of loss is required," as set forth in the limitations provision of the Master Group Contract, refers to the same date on which an insured was required to file with Blue Cross his or her "claim." The notion that "claim" is synonymous with "written proof of loss" is supported by the heading to the policy provision requiring insureds (or their service providers) to file claims with Blue Cross. That heading states: "NOTICE OF CLAIM/PROOF OF LOSS." This reading of the policy is consistent with the certificate of coverage given to Brodine. It stated that the insured could not file a lawsuit "more than three years from the time the *claim* is required to be filed." (Emphasis supplied.)

The contract provided two alternative deadlines for filing a claim for services with Blue Cross. The claim was to be filed within 90 days of the time medical services had been provided, and if the claim was not filed within 18 months, benefits would not be paid. The last date on which Brodine received medical treatment was May 7, 1999. Accordingly, at the earliest, she was

required to file a claim with Blue Cross within 90 days of May 7, and at the latest, within 18 months of May 7.

For purposes of our summary judgment analysis, we give Brodine the benefit of all reasonable inferences deducible from the evidence and assume that the 3-year limitations period started to run 18 months from May 7, 1999. As the district court concluded, 3 years plus 18 months from the last date of service required Brodine to file her action against Blue Cross no later than November 7, 2003. Thus, the time for filing this action had come and gone by the time Brodine filed on December 22. We conclude the district court correctly determined that Brodine's action was untimely filed. Brodine's argument is without merit.

EFFECT OF FEDERAL LAWSUIT

Brodine next argues that the limitations period should have been tolled during the pendency of the federal lawsuit. The district court recognized that if Brodine was entitled to such tolling, she would have an extra 7 months 2 days to file this action and her action would have been timely. However, the court determined that the federal lawsuit did not toll the running of the applicable statute of limitations and that, therefore, the action was time barred. Blue Cross argues that Brodine was not prevented from bringing a timely action in state court while the federal lawsuit was pending and that Neb. Rev. Stat. § 25-201.01 (Cum. Supp. 2004) did not apply.

The question is whether the 3-year contractual limitations period was tolled by the pendency of the federal action between these same parties. Section 25-201.01 includes a savings clause for actions filed in federal court that are dismissed because of the loss of diversity jurisdiction. Section 25-201.01 reads, in relevant part, as follows:

(1) If an action is commenced within the time prescribed by the applicable statute of limitations but the plaintiff fails in the action for a reason other than a reason specified in subsection (2) of this section and the applicable statute of limitations would prevent the plaintiff from commencing a new action, the plaintiff . . . may commence a new action within the period specified in subsection (3) of this section.

(2) A new action may not be commenced in accordance with subsection (1) of this section when the original

> action failed . . . (b) as a result of voluntary dismissal by the plaintiff for a reason other than loss of diversity jurisdiction in a federal court . . . .
>
> (3) A new action may be commenced in accordance with subsection (1) of this section within a period equal to the lesser of (a) six months after the failure of the action or (b) a period after the failure of the action equal to the period of the applicable statute of limitations of the original action.

Section 25-201.01 did not toll the statute of limitations. The statute does not apply because the limitations period did not "prevent [Brodine] from commencing a new action" after the federal case was dismissed, as required by subsection (1). The federal action was dismissed on November 25, 2002. Thus, assuming for purposes of our summary judgment review that the limitations period expired on November 7, 2003, Brodine still had more than 11 months in which to file her action in state court after the federal action had been dismissed.

Section 25-201.01(2) also prevented tolling as a result of the federal action. Brodine did not file her claim in federal court based on *diversity*, but because she alleged a *federal question* existed under ERISA. The case was dismissed not as a result of the loss of diversity, but by a joint stipulation of the parties, who doubted whether a federal question actually existed and whether the federal court had subject matter jurisdiction.

We next consider whether the federal action tolled the applicable statute of limitations based on equitable principles. We have previously considered whether the filing of another lawsuit served to toll the applicable statute of limitations. In *National Bank of Commerce v. Ham*, 256 Neb. 679, 592 N.W.2d 477 (1999), a bank filed an action against a defaulting borrower beyond the applicable statute of limitations. The bank argued that the statute of limitations had been tolled because the borrower had been subject to an automatic bankruptcy stay. This court held that the applicable statute of limitations was not tolled. We discussed our precedents on such issue based on equitable principles. We summarized the relevant cases in the following manner:

> In *First Nat. Bank of Plattsmouth v. Gibson*, 74 Neb. 236, 105 N.W. 1081 (1906), the creditor successfully litigated its right to set aside a conveyance as fraudulent, but because

it was unable to recover from the resultant forced sale of the property, the creditor brought a later action in equity to reach the rents and profits from the land. We held that the latter action was not time barred, stating: "In this action it was necessary to show that the land had been fraudulently transferred. No recovery could be had without the existence of that fact. While that question was being litigated in the courts, the statute of limitations as to any claim that depended upon the questions there in controversy would not run in favor of one party in that controversy and against the other." *Id.* at 242, 105 N.W. at 1083.

In *Macke v. Jungels*, 102 Neb. 123, 166 N.W. 191 (1918), we held that it would be inequitable to allow the statute of limitations to run on a claim for damages during the pendency of an action enjoining the plaintiff from bringing suit on that claim.

In *Lincoln Joint Stock Land Bank v. Barnes*, 143 Neb. 58, 8 N.W.2d 545 (1943), defendants in a mortgage foreclosure appealed a decree of foreclosure in favor of the plaintiff. The foreclosure was commenced June 7, 1928. On December 17, 1930, the case was removed from the docket but remained pending with leave to reinstate pursuant to a federal court order restraining the plaintiff from proceeding further. The action was subsequently reinstated, and the defendants contended that the plaintiff was barred by the applicable statute of limitations. We concluded that the plaintiff having been restrained from proceeding further by a paramount authority, the period thereof should not be considered in computing the time for the statute of limitations to run, and that the plaintiff was not so barred.

*Ham*, 256 Neb. at 690, 592 N.W.2d at 484.

We determined in *Ham* that equitable principles did not apply because the bankruptcy code provided an extra 30 days to file an action if the claim expired before the automatic stay was lifted or the bankruptcy was dismissed. We found no inequity in requiring the bank to commence its action within 30 days following the termination or dismissal of the bankruptcy.

The equitable principles discussed in *Ham* do not apply in the case at bar. The filing of this action in state court was not

dependent upon the resolution of any issues in Brodine's federal lawsuit, and the federal court did not enjoin or restrain Brodine from proceeding further against Blue Cross.

Brodine initiated her claim against Blue Cross in federal court, but it was never decided whether the federal court had jurisdiction over her complaint. More important, the limitations period had not run by the time the federal action was dismissed. Rather, viewing the evidence in the light most favorable to Brodine, we conclude that once the federal action was dismissed on November 25, 2002, more than 11 months remained still to run on the limitations period.

The district court did not err in finding that the applicable limitations period was not tolled during the pendency of the federal action.

## CONCLUSION

The district court was correct in determining that the 3-year contractual limitation was enforceable under Nebraska law. Viewing the evidence in the light most favorable to Brodine and giving her the benefit of all reasonable inferences deducible from the evidence, we conclude that the 3-year limitations period started to run 18 months from May 7, 1999, the date of her last medical treatment. Three years plus 18 months from the last date of service required the action to be commenced no later than November 7, 2003. Thus, the limitations period had already expired when Brodine filed this action on December 22. The district court correctly found that the applicable limitations period was not tolled during the pendency of the federal action, and the judgment is affirmed.

AFFIRMED.

HEAVICAN, C.J., not participating.