HAUPTMAN, O'BRIEN, WOLF & LATHROP, P.C., APPELLEE, V.
LOUIS J. TURCO, JR., AND LUCIA TURCO, APPELLANTS.

735 N.W.2d 368

Filed July 13, 2007.    No. S-05-928.

Jeff T. Courtney for appellants.

Terry M. Anderson and Melany S. Chesterman, of Hauptman, O'Brien, Wolf & Lathrop, P.C., for appellee.

HEAVICAN, C.J., WRIGHT, CONNOLLY, GERRARD, STEPHAN, MCCORMACK, and MILLER-LERMAN, JJ.

STEPHAN, J.

Louis J. Turco, Jr., engaged the law firm of Hauptman, O'Brien, Wolf & Lathrop, P.C., to represent his minor daughter, Lucia Turco, with respect to her personal injuries and the death of her unborn child resulting from a motor vehicle accident. Louis executed a contingent fee agreement with the firm.

After receiving a settlement offer, but before accepting it, Louis advised the firm that he was terminating its services. The firm then brought this action to enforce an attorney lien against Louis and Lucia (collectively the Turcos) in an amount computed in accordance with the contingent fee agreement. The Turcos asserted various defenses, including a claim that the amount of the fee was unreasonable. The district court for Douglas County granted the firm's motion for summary judgment, and the Turcos appealed. Because the record does not afford a sufficient basis for determining the reasonableness of the claimed fee, we conclude that there are genuine issues of material fact which preclude summary judgment and therefore reverse, and remand for further proceedings.

## BACKGROUND

On June 20, 2004, Lucia was a passenger in an automobile involved in an accident with another vehicle. Lucia was a minor at the time of the accident and was 31 weeks pregnant. She suffered a broken femur and the loss of her unborn child. She was hospitalized for 6 days.

Several days after the accident, Louis contacted the law firm on Lucia's behalf and met with an attorney from the firm. During the meeting, he explained that Lucia had been a passenger in an automobile which was struck by a drunk driver and that her unborn child had died as a result. Louis did not employ the law firm at this initial meeting, but he did leave the office with a brochure and a copy of the firm's contingent fee agreement.

On July 8, 2004, Louis, his wife, and Lucia again met with attorneys from the law firm. During this meeting, the parties discussed Lucia's injuries, responsibility for medical bills, issues relating to the possible wrongful death claim, and the length of time it would take to resolve the matters. The details and particulars of the accident and Lucia's injuries were related to the law firm. From the attorneys' comments, Louis understood that "it would be a lot of work to get the insurance companies to pay the claim" and that the firm would not consider settling for 6 to 8 months because of uncertainty as to the extent of Lucia's injuries and the resulting medical bills. The contingent

fee agreement was explained during this meeting, and Louis signed it.

The agreement provided that the firm's fee would be "thirty-three and one-third percent (33 1/3%) of the gross amount recovered either by judgment or by settlement . . . calculated independently of any costs or bills owed by client." It included an acknowledgment that the fee was "dependent upon the outcome of client's claim" and that the firm had explained that the case "could be handled at an attorney's regular hourly rate, plus expenses, payable monthly as billed, but client prefers that this matter be handled on a contingent fee basis." The agreement also included the following provision:

> In the event of termination of attorney's representation, attorney shall have a lien for fees and expenses, which lien will be imposed upon any sums recovered by, for, or on behalf of client. For purposes of computing the contingency fee to which attorney is entitled, the 33 1/3 percentage shall be computed based upon the last settlement offer received by attorney from defendant's representatives. If no such settlement offer has been tendered, attorney shall be allowed fees in an amount equal to his/her standard hourly rate for the hours expended, as well as the hourly rate of paralegal and other support staff utilized on client's behalf.

Members of the firm explained to the Turcos that this provision was necessary to protect it from clients who would terminate its services in order to avoid payment of a fee.

On August 9, 2004, an attorney from the firm telephoned Louis' wife and informed her that the liability insurance carrier for the driver of the other vehicle involved in the accident had offered to settle for its policy limits. The attorney told her that the next step would be to pursue underinsured coverage. Neither Louis nor his wife told the attorney that they would accept the settlement offer, which was in the amount of $194,000.

Following a court hearing in September 2004, Louis became dissatisfied with the firm. On September 14, he delivered a letter to the law firm terminating its services. Although he was aware of the provision of the contingent fee agreement specifying the fee payable upon termination, he felt that the law firm

had expended little time and effort and that the fee of 33⅓ percent of the settlement offer was excessive for the amount of work done.

After the firm tried unsuccessfully to resolve the dispute regarding the fee, it served notice of an attorney lien on the attorney representing the party which had made the settlement offer. The notice stated that the lien was in the amount of $64,600 and represented fees owed pursuant to the contingent fee agreement signed by Louis. New counsel retained by Louis subsequently advised the firm that while Louis agreed that it was entitled to be compensated for the "reasonable value of services provided up to the time of [the firm's] termination" and reimbursed for expenses incurred, the amount of the claimed lien was excessive.

The law firm subsequently brought this action against the Turcos, generally alleging breach of contract. In their answer, the Turcos alleged that terms of the contingent fee agreement were unconscionable, that the execution of the agreement was fraudulently induced, and that the amount of the fee claimed by the firm was "unreasonable and excessive." The firm filed a motion for summary judgment, as did the Turcos. The district court granted the law firm's motion and denied that filed by the Turcos. The Turcos perfected this appeal, which we moved to our docket on our own motion pursuant to our statutory authority to regulate the caseloads of the appellate courts of this state.[1]

## ASSIGNMENTS OF ERROR

The Turcos assign, restated, that the district court erred in granting the law firm's motion for summary judgment because (1) there are genuine issues of material fact as to whether the fee is excessive for the amount of work actually performed, (2) the law firm failed to present evidence that the terms of the fee agreement were reasonable, and (3) there are genuine issues of material fact as to whether the law firm made fraudulent representations that the Turcos relied upon to their detriment.

---

[1] See Neb. Rev. Stat. § 24-1106(3) (Reissue 1995).

## STANDARD OF REVIEW

Summary judgment is proper when the pleadings and evidence admitted at the hearing disclose that there is no genuine issue as to any material fact or as to the ultimate inferences that may be drawn from those facts and that the moving party is entitled to judgment as a matter of law.[2] In reviewing a summary judgment, an appellate court views the evidence in the light most favorable to the party against whom the judgment is granted and gives such party the benefit of all reasonable inferences deducible from the evidence.[3]

## ANALYSIS

The party moving for summary judgment has the burden to show that no genuine issue of material fact exists and must produce sufficient evidence to demonstrate that it is entitled to judgment as a matter of law.[4] The evidence offered by the law firm in support of its motion for summary judgment included the contingent fee agreement and notice of attorney lien, the deposition of Louis, and the termination letter Louis delivered to the firm. These latter documents reflect Louis' dissatisfaction with the firm's services and his reasons for claiming that the amount of the fee was unreasonable. The law firm also offered the affidavit of an attorney who opined that the contingent fee agreement utilized in this case "is a reasonable fee agreement and is not excessive" and that the firm was experienced and enjoyed an "outstanding reputation" in the legal, insurance, and medical communities. However, this affidavit does not address the reasonableness of the fee itself.

The firm contends that the reasonableness of its claimed fee is not at issue. In its brief, the firm argues that it has not

---

[2] *Ferer v. Aaron Ferer & Sons*, 272 Neb. 770, 725 N.W.2d 168 (2006); *Brodine v. Blue Cross Blue Shield*, 272 Neb. 713, 724 N.W.2d 321 (2006).

[3] *In re Adoption of Jaden M.*, 272 Neb. 789, 725 N.W.2d 410 (2006); *Ferer v. Aaron Ferer & Sons, supra* note 2.

[4] *Crouse v. Pioneer Irr. Dist.*, 272 Neb. 276, 719 N.W.2d 722 (2006); *Lovette v. Stonebridge Life Ins. Co.*, 272 Neb. 1, 716 N.W.2d 743 (2006).

claimed that the fee is owed "only because [it] is reasonable."[5] Instead, it argues that the fee computed in accordance with the contingent fee agreement "is owed because [the Turcos] agreed to pay that specific amount."[6] It further argues that whether that amount "has been shown to be 'reasonable' is not relevant" to its claim for breach of contract.[7] In support of this argument, the firm relies in part upon *Mecham v. Colby*,[8] which it cites for the proposition that written, unambiguous fee agreements between attorney and client are enforceable where the agreement contains a set or identifiable amount of the fee owed to the attorney.

In *Mecham*, we affirmed a summary judgment in favor of an attorney who had negotiated a settlement on behalf of a client involved in a complex dispute relating to an estate's inherited shares of corporate stock. After the settlement was consummated, the attorney billed the client in the amount of $2,000 and the client approved the statement in writing. The client later refused to pay the fee. We held that the client's written approval of the billing statement constituted a contract enforceable by the attorney, notwithstanding the client's subsequent claim that the settlement was not in her best interests. The record in *Mecham* included affidavits establishing that the attorney had achieved "the best possible settlement that was obtainable" for the client and that the "reasonable value" of his services was "between $7,500 and $10,000," far in excess of the $2,000 fee established in the contract.[9] The opinion does not recite any evidence placing the value of the attorney's services at less than the amount claimed. Thus, *Mecham* does not support an argument that an attorney fee contract is enforceable in the absence of some showing that the amount of the claimed fee is reasonable.

---

[5] Brief for appellee at 9.

[6] *Id.* at 9-10.

[7] *Id.* at 10.

[8] *Mecham v. Colby*, 156 Neb. 386, 56 N.W.2d 299 (1953).

[9] *Id.* at 393, 56 N.W.2d at 302-03.

■ Our jurisprudence recognizes that an attorney fee agreement is different from conventional commercial contracts.[10] The difference arises from the fact that an attorney may not recover for services rendered if those services are rendered in contradiction to the requirements of professional responsibility and are inconsistent with the character of the profession.[11]

The Code of Professional Responsibility, which was in effect when the legal services at issue in this case were performed, provided: "A lawyer shall not enter into an agreement for, charge, or collect an illegal or clearly excessive fee."[12] Under the code, a fee was deemed "clearly excessive when, after a review of the facts, a lawyer of ordinary prudence would be left with a definite and firm conviction that the fee is in excess of a reasonable fee."[13] The code enumerated eight factors to be considered as guides in determining the reasonableness of the fee, one of which was "[w]hether the fee is fixed or contingent."[14] The Nebraska Rules of Professional Conduct, which are currently in effect, similarly provide that a lawyer "shall not make an agreement for, charge, or collect an unreasonable fee," and list the same eight factors to be considered in determining the reasonableness of a fee.[15] The official comment 3 to rule 1.5 specifically states: "Contingent fees, like any other fees, are subject to the reasonableness standard of paragraph (a) of this Rule."

Citing authority from other jurisdictions, we have held that "[a] contingent fee which is not fair and reasonable can not be recovered in an action for attorney fees."[16] In *Kirby*, we held

---

[10] See, *Baker v. Zikas*, 176 Neb. 290, 125 N.W.2d 715 (1964); *Byrne v. Hauptman, O'Brien*, 9 Neb. App. 77, 608 N.W.2d 208 (2000).

[11] *Sherrets, Smith v. MJ Optical, Inc.*, 259 Neb. 424, 610 N.W.2d 413 (2000); *Zimmerman v. FirsTier Bank*, 255 Neb. 410, 585 N.W.2d 445 (1998); *State ex rel. FirsTier Bank v. Mullen*, 248 Neb. 384, 534 N.W.2d 575 (1995).

[12] Code of Professional Responsibility, Canon 2, DR 2-106(A).

[13] *Id.*, DR 2-106(B).

[14] *Id.*, DR 2-106 (B)(8).

[15] Neb. Ct. R. of Prof. Cond. 1.5(a) (rev. 2005).

[16] *Kirby v. Liska*, 214 Neb. 356, 362, 334 N.W.2d 179, 183 (1983).

that the evidence was insufficient to establish an oral contingent fee agreement. Noting that the record showed that the attorney "examined the record, filed some pleadings, wrote some correspondence, conferred with his client, obtained continuances, drafted a settlement offer, and was present when the settlement agreement was signed," we concluded that it did "not sustain an allowance of $65,340 for attorney fees upon the basis of an express agreement or upon a quantum meruit basis. Such an amount is excessive."[17]

■ We conclude that an attorney fee computed pursuant to a contingent fee agreement is subject to the same standard of reasonableness as any other attorney fee. To hold otherwise would require us to ignore the ethical principle which prohibits a lawyer from making an agreement for, charging, or collecting an unreasonable fee. We agree with the observation of the Court of Special Appeals of Maryland that "'[e]ither a fixed or contingent fee, proper when contracted for, may later turn out to be excessive.'"[18] Under the Code of Professional Responsibility applicable to this case and the Nebraska Rules of Professional Conduct currently in effect, whether a fee is fixed or contingent is only one factor to be considered in determining whether the fee is reasonable.

■ In a suit to recover an unpaid fee, "the lawyer has the burden of persuading the trier of fact, when relevant, of the existence and terms of any fee contract, the making of any disclosures to the client required to render a contract enforceable, and the extent and value of the lawyer's services."[19] The value of an attorney's services is ordinarily a question of fact.[20] Here, the evidence offered by the law firm in support of its motion for summary judgment established that Louis signed a contingent fee agreement which was reasonable on its face and

---

[17] *Id.* at 363, 334 N.W.2d at 183.

[18] *Brown & Sturm v. Frederick Rd.*, 137 Md. App. 150, 181, 768 A.2d 62, 79 (2001).

[19] Restatement (Third) of the Law Governing Lawyers § 42(2) at 301 (2000).

[20] *Sherrets, Smith v. MJ Optical, Inc., supra* note 11; *Grimminger v. Cummings*, 176 Neb. 142, 125 N.W.2d 613 (1963).

included an acknowledgment that the law firm had offered Louis the alternative of an hourly fee billed monthly, which he declined. There is also evidence that the law firm is experienced and respected in handling personal injury suits. However, the law firm presented no evidence of the extent and value of the professional services which it performed during the period from July 8, 2004, when the contingent fee agreement was executed until September 14, 2004, when Louis terminated the representation. Without such evidence, there is no factual basis upon which to determine whether or not the claimed fee computed pursuant to the contingent fee agreement is reasonable. The district court erred in sustaining the law firm's motion for summary judgment because the firm did not meet its initial burden, as the moving party, of showing that there is no genuine issue of material fact and that it is entitled to judgment as a matter of law. Because this conclusion requires reversal, we do not reach the Turcos' other assignments of error.

## CONCLUSION

For the reasons discussed, we reverse the judgment of the district court and remand the cause for further proceedings.

REVERSED AND REMANDED FOR
FURTHER PROCEEDINGS.

GERRARD, J., concurring.

I agree with the majority opinion, which clearly explains the basic principles involved in this kind of fee dispute. It is well established that a contingent fee which is not fair and reasonable cannot be recovered in an action for attorney fees.[1] I write separately, in light of further proceedings in this case, because the parties have a fundamental disagreement on the evidence necessary for a lawyer to establish a prima facie case that the fees sought are reasonable. Further, the parties disagree on the evidence the client would then need to produce in order to show the existence of a material issue of fact precluding judgment as a matter of law on the issue of reasonableness in a contingency fee case.

---

[1] See, *Kirby v. Liska*, 214 Neb. 356, 334 N.W.2d 179 (1983); *Byrne v. Hauptman, O'Brien*, 9 Neb. App. 77, 608 N.W.2d 208 (2000).

As our opinion explains, in a suit to recover an unpaid fee, the lawyer has the burden of proving the existence and terms of any fee contract, the making of any disclosures to the client required to render a contract enforceable, and the extent and value of the lawyer's services.[2] A lawyer can establish the extent and value of his or her services in a contingency fee case by producing evidence showing, for example, the results obtained, the quality of the work, and whether the lawyer's efforts substantially contributed to the result.[3] We have also identified other factors relevant to the reasonableness of a contingency fee, such as the time and labor required, the novelty and difficulty of the legal issues involved, the skill required to do the work properly, and the experience, reputation, and ability of the lawyer performing the services.[4] While the pertinent factors will differ from case to case, generally, the inquiry should focus on the circumstances of the agreement and the work performed.[5]

At that point, the burden of going forward with evidence shifts to the client, and the client must object with specificity to demonstrate why the documented fees are not reasonable.[6] The client must, for instance, produce competent evidence disputing specific facts respecting the reasonableness of the fees or set forth the basis for a qualified opinion that the fees are unreasonable.[7] In particular, it will generally be insufficient to simply conclude that the size of a contingent fee, compared to the length of the litigation, makes the fee unreasonable. There

---

[2] See Restatement (Third) of the Law Governing Lawyers § 42(2) (2000). See, also, *Byrne v. Hauptman, O'Brien, supra* note 1.

[3] See *McKenzie Const., Inc. v. Maynard*, 758 F.2d 97 (3d Cir. 1985). See, also, *King v. Fox*, 418 F.3d 121 (2d Cir. 2005).

[4] See *Kirby v. Liska, supra* note 1.

[5] See *King v. Fox, supra* note 3.

[6] *In re Ralph Lauren Womenswear, Inc.*, 204 B.R. 363 (S.D.N.Y. 1997). See, also, e.g., *Cloutier, Barrett, et al. v. Wax*, 604 A.2d 42 (Me. 1992); *Basin Credit Consultants, Inc. v. Obregon*, 2 S.W.3d 372 (Tex. App. 1999).

[7] See *id.* Compare, e.g., *Hinkle, Cox, et al. v. Cadle Co.*, 115 N.M. 152, 848 P.2d 1079 (1993).

are a number of reasons why, in any particular case, a contingency fee agreement may be more advantageous to a client than an hourly fee paid on a monthly basis. A contingency fee will generally be reasonable if the lawyer offered the client a free and informed choice between an hourly fee and a contingency fee, the contract provides for a fee within the range commonly charged by other lawyers in similar representations, and there was no subsequent change in circumstances that made the fee contract unreasonable.[8]

And while events may occur after a fee agreement was made so that a contingent fee arrangement that was fair in the first instance becomes unfair in its enforcement, courts should be reluctant to disturb contingent fee arrangements freely entered into by knowledgeable and competent parties.[9] A prompt and efficient attorney who achieves a fair settlement without litigation serves both the client and the interests of justice.[10] It should therefore be the unusual circumstance that a court refuses to enforce a fully informed contingent fee arrangement because of events arising after the contract's negotiation.[11]

> A contingent-fee contract . . . allocates to the lawyer the risk that the case will require much time and produce no recovery and to the client the risk that the case will require little time and produce a substantial fee. Events within that range of risks, such as a high recovery, do not make unreasonable a contract that was reasonable when made.[12]

In short, once a lawyer has established a prima facie case that a demanded fee is reasonable, judgment as a matter of law is precluded only if the client produces specific evidence on factors relevant to the reasonableness of the fee. Only at that point does the client show a genuine issue of material fact, so as to place the burden on the lawyer to persuade the trier of fact

---

[8] See Restatement, *supra* note 2, § 34, comment *c*.

[9] *McKenzie Const., Inc. v. Maynard, supra* note 3.

[10] See *id.*

[11] See *id.*

[12] Restatement, *supra* note 2, § 34, comment *c*. at 250.

that the fee demanded is reasonable under the circumstances.[13] But because, as the majority opinion explains, the law firm in this case did not meet its initial burden, I agree that the summary judgment in this case should be reversed. I concur in the judgment.

CONNOLLY and McCORMACK, JJ., join in this concurrence.

[13] See Restatement, *supra* note 2, §§ 34 and 42.