IN THE NEBRASKA COURT OF APPEALS

**MEMORANDUM OPINION AND JUDGMENT ON APPEAL**
**(Memorandum Web Opinion)**


ST. JOHN V. GERING PUBLIC SCHOOLS


NOTICE: THIS OPINION IS NOT DESIGNATED FOR PERMANENT PUBLICATION
AND MAY NOT BE CITED EXCEPT AS PROVIDED BY NEB. CT. R. APP. P. § 2-102(E).


EDWARD ST. JOHN, APPELLEE, AND JAMES L. ZIMMERMAN, APPELLANT,
AND BRENDA L. BARTELS AND MONTE L. NEILAN, APPELLEES,

V.

GERING PUBLIC SCHOOLS AND NASB WORKERS COMPENSATION POOL,
ITS WORKERS' COMPENSATION CARRIER, APPELLEES.


Filed April 17, 2018.    No. A-17-898.


Appeal from the Workers' Compensation Court: JOHN R. HOFFERT, Judge. Affirmed.

James L. Zimmerman, of Zimmerman Law Firm, P.C., L.L.O., pro se.

Brenda L. Bartels, of Hanes & Bartels, L.L.C., pro se.

Monte L. Neilan, pro se.


MOORE, Chief Judge, and PIRTLE and ARTERBURN, Judges.

MOORE, Chief Judge.

INTRODUCTION

Edward St. John engaged the services of multiple attorneys to represent him at various points in the pursuit of his claims in the Nebraska Workers' Compensation Court. Ultimately, St. John's claims were settled via the court's approval of a final lump sum settlement of $500,000, out of which a $165,000 attorney contingency fee was placed in trust for disbursement to his attorneys. St. John's attorney at the time the settlement was approved, James L. Zimmerman, and his previous attorneys, Monte L. Neilan and Brenda L. Bartels, filed attorney liens. Following an evidentiary hearing, the compensation court distributed half of the funds held in trust to

Zimmerman and the other half to Bartels and Neilan. Zimmerman appeals. Finding no error, we affirm.

BACKGROUND

In 2011, St. John was injured in an accident arising out of and in the course of his employment with Gering Public Schools. St. John retained Scottsbluff attorney, Zimmerman, to prosecute his workers' compensation claim, and he and Zimmerman executed a contingency fee agreement on March 8, 2013. Thereafter, St. John moved from Scottsbluff, Nebraska to Colorado Springs, Colorado to live with his former wife, Andrea VonLindeman. St. John hired Bartels, a Nebraska licensed attorney practicing in Colorado Springs. Bartels, in turn, hired Scottsbluff attorney, Neilan, to assist with St. John's claim. On January 23, 2014, St. John discharged Zimmerman and executed a contingency fee agreement with Bartels and Neilan.

On February 24, 2014, St. John filed a petition in the compensation court, seeking benefits for his work-related accident and injury.

Trial was scheduled for September 9, 2014, but prior to that date, the parties informed the compensation court that they had resolved the issues then ripe for trial and that a joint stipulated award would be filed. On October 23, the parties filed a joint stipulated award, which provided, among other things, that St. John was injured in a work-related accident, set forth his entitlement to certain benefits and reimbursements, but indicated that he had not yet reached maximum medical improvement and remained temporarily totally disabled. The joint stipulated award included a provision that Neilan's law firm was entitled to a lien for attorney fees and costs in an amount to be determined at a later date. The stipulated award was signed by Neilan and by the school's attorney. Also on October 23, the court entered an order approving the parties' joint stipulated award.

On November 20, 2014, St. John discharged Bartels and Neilan, who filed a notice of their attorney lien on December 8. St. John re-signed the contingency fee agreement with Zimmerman, who filed an entry of appearance on December 15.

On March 22, 2017, the parties filed an application for approval of final lump sum settlement. A notice of the lien filed by Bartels and Neilan was attached to the application. On March 24, Zimmerman filed notice of his own attorney lien.

The parties filed an amended application for approval of final lump sum settlement on May 24, 2017. According to the amended application, St. John's claim would be settled for $500,000, with $335,000 being paid to St. John and the remaining $165,000 being held in trust for subsequent disbursement to his attorneys. The application provided that Bartels, Neilan, and Zimmerman agreed that the $165,000 satisfied any attorney liens owed by St. John in the case. In an order entered on May 24, the compensation court approved the lump sum settlement. The court noted the existence of the dispute involving claimed attorney liens and ordered that any of the attorneys claiming entitlement to an attorney fee could petition the court for a hearing to address distribution of the funds placed in trust.

An evidentiary hearing on the fee distribution was held before the compensation court on June 8, 2017. The court heard testimony from St. John and VonLindeman, who were then residing

together in Gering. Their testimony generally reflects their dissatisfaction with the legal services provided by Bartels and Neilan. The court also received various exhibits offered by the attorneys.

Bartels and Neilan submitted a certified copy of pleadings they filed in the case and individual affidavits from themselves, as well as affidavits from Robin Kinney, an employee of Neilan's law firm, and David Dudley, a Nebraska attorney.

According to Kinney's affidavit, she conducted a review of the documents in the file St. John picked up from Zimmerman and delivered to Neilan's office in February 2014. She created a listing of the documents in St. John's file and performed some calculations "to determine what percentage each office contributed to the file documents." She concluded that Bartels and Neilan contributed 79 percent, Zimmerman contributed 4 percent, and an attorney retained by St. John prior to his first retention of Zimmerman contributed 17 percent. It is not clear from her affidavit when her calculations were performed.

In his affidavit, Neilan addressed the factors relevant to the recovery of attorney fees identified by the Nebraska Supreme Court in *Hauptman, O'Brien v. Turco*, 273 Neb. 924, 735 N.W.2d 368 (2007), and he attached numerous supporting documents, including documentation of his time and services. Documentation of Bartels' time and services was attached to her affidavit. In Neilan's affidavit, he stated that St. John's case required substantial time and labor while represented by Bartels and Neilan, noting that Bartels documented 79.9 hours of work and an additional 1.6 hours of paralegal time, while Neilan documented 81 hours of work and 24 hours of paralegal time. Neilan stated that costs of $4,199.18 were incurred, which were fair and reasonable; however, he acknowledged that he failed to obtain authorization from St. John to expend costs of more than $2,500. Accordingly, Neilan stated that he and Bartels were seeking to be reimbursed for only $2,500 in costs. Neilan stated that the fee customarily charged in the locality for similar services was a one-third contingent fee and that such a fee in this case was reasonable. He stated that the $165,000 which had been set aside for the fees and costs of all attorneys in this case was a reasonable amount. Neilan's affidavit also addressed the difficulty of the questions involved in St. John's case and the substantial legal skill required during the time St. John was represented by Neilan and Bartels. According to Neilan, his acceptance of employment by St. John precluded other employment by Neilan, but he had no evidence that this was made apparent to St. John. Neilan also addressed the dollar amount of the benefits involved and the favorable results obtained by Bartels and Neilan for St. John; the time limitations imposed by St. John or circumstances; the nature and length of the professional relationship with St. John; and Neilan's own experience, reputation, and ability.

Neilan also addressed correspondence sent by St. John to the compensation court following approval of the joint stipulated award, which detailed St. John's concerns with his representation by Bartels and Neilan. Neilan stated that much of the content of St. John's correspondence was inaccurate or untrue. Neilan detailed his disagreements with St. John's assertions and provided his own version of the events addressed in St. John's correspondence. In doing so, Neilan acknowledged that the joint stipulated award erroneously listed an injury to St. John's right shoulder, when the actual injury was to his left shoulder. Neilan also acknowledged that errors were made in the mileage submitted as part of the stipulated award and noted his previous agreement to reduce his fee by the amount of the reimbursable difference of $275.75.

The compensation court received Dudley's affidavit over Zimmerman's foundation objection. Dudley is a licensed Nebraska attorney with experience in workers' compensation law. Based on his previous experience opposing Neilan in workers' compensation cases, Dudley stated that Neilan was an effective advocate for injured employees. Dudley was not familiar with Bartels, but based on his review of documentation of Bartels and Neilan's joint representation of St. John, Dudley stated that Neilan and Bartels worked together effectively in representing St. John. Dudley detailed the records he reviewed in forming an opinion as to the relative contributions of Bartels and Neilan to St. John's representation. Based upon his review, Dudley proffered various opinions about the value and effectiveness of Bartels and Neilan's contributions to the case and concluded that "when considering the total benefit of legal services provided St. John by attorneys representing him in the [compensation court], including the ultimate negotiation and approval of [the lump sum settlement], 65% of that benefit was provided by the joint representation of Neilan and Bartels."

In addition to calling St. John and VonLindeman to testify, Zimmerman also submitted exhibits including a spreadsheet prepared by VonLindeman "regarding the mileage and reimbursements for travel for doctors that were incorrect on the original stipulation," copies of drafts of the joint stipulation with handwritten notations regarding alleged errors, a copy of the fee agreement between Zimmerman and St. John, a letter St. John wrote to the compensation court expressing his concerns, some email correspondence between VonLindeman and/or St. John and Bartels, and various emails exchanged by attorneys in this case. Zimmerman's contingency fee agreement provided for fees of "33 1/3% of all sums collected after suit filed, whether by way of lump sum settlement before trial or the result of trial."

On July 24, 2017, the compensation court entered an order, dividing the $165,000 being held in trust equally, with one-half going to Zimmerman and the other half going to Bartels and Neilan. After reviewing relevant case law regarding attorney fees, the court concluded:

> It is reasonably clear to the [c]ourt that [Bartels and Neilan] despite the criticisms leveled by [St. John] as well as [VonLindeman] did successfully position [St. John's] claims so as to secure the aforementioned Joint Stipulated Award. That Award essentially resolved all of the issues typically attending a workers' compensation claim **except** for the ultimate issues of maximum medical improvement (MMI); permanency of injury(ies) and the extent of any resulting permanent disability. These missing elements were secured during the tenure of [Zimmerman's] representation of [St. John] ultimately leading to the submission of the final lump sum settlement two years later.
>
> In summary, it is clear that [St. John's] ultimate recovery was achieved through the efforts of attorneys [Bartels and Neilan] and Zimmerman. [Bartels and Neilan] laid the groundwork for attorney Zimmerman to develop and position the case for the settlement eventually presented to the [c]ourt for approval. While the undersigned might have appreciated more detail regarding the efforts so expended by attorney Zimmerman, the fact remains that the ultimate settlement figure secured by [Zimmerman] for [St. John] did exceed the settlement value provided by [Bartels and Neilan] to [St. John] several years prior. In doing so, attorney Zimmerman obviously persuaded the defendants that a significant permanent disability had befallen [St. John].

There is, of course, no mathematical formula by which the [c]ourt can determine the value in monetary terms of the efforts of each of the attorneys who have represented [St. John]. Restated, no articulable basis was gleaned from the evidence offered so as to lead the fact finder to value the relative contribution of one attorney over the other vis-à-vis the result ultimately achieved. Again, even if the attorneys involved did not coordinate their labors the settlement of [St. John's] claim was the product of their individual efforts. Each played a role of importance even if [St. John] himself valued the work of one over the other. That subjective assessment while not to be ignored is, however, not the determinative factor given the criteria established by the Nebraska Supreme Court.

(Emphasis in original.) The court then concluded, based on "the applicable governing standards" as well as the evidence submitted, that the fee should be divided equally and that each share of the disputed fee was also meant to cover any costs incurred in representing St. John's interests. The court ordered the $165,000 being held in trust distributed with half being paid to Zimmerman and the other half being paid to Bartels and Neilan.

ASSIGNMENTS OF ERROR

Consolidated and restated, Zimmerman asserts that the compensation court erred in (1) admitting Dudley's affidavit into evidence over his foundation objection and (2) dividing the attorney fees equally.

STANDARD OF REVIEW

Pursuant to Neb. Rev. Stat. § 48-185 (Cum. Supp. 2016), an appellate court may modify, reverse, or set aside a Workers' Compensation Court decision only when (1) the compensation court acted without or in excess of its powers; (2) the judgment, order, or award was procured by fraud; (3) there is not sufficient competent evidence in the record to warrant the making of the order, judgment, or award; or (4) the findings of fact by the compensation court do not support the order or award. *Hintz v. Farmers Co-op Assn.*, 297 Neb. 903, 902 N.W.2d 131 (2017). Findings of fact made by the Workers' Compensation Court have the same force and effect as a jury verdict and will not be set aside unless clearly erroneous. *Id.* When testing the sufficiency of the evidence to support findings of fact made by the Workers' Compensation Court trial judge, the evidence must be considered in the light most favorable to the successful party and the successful party will have the benefit of every inference reasonably deducible from the evidence. *Id.* An appellate court is obligated in workers' compensation cases to make its own determinations as to questions of law. *Kohout v. Bennett Constr.*, 296 Neb. 608, 894 N.W.2d 821 (2017).

ANALYSIS

*Admission of Dudley Affidavit.*

Zimmerman asserts that the compensation court erred in admitting Dudley's affidavit into evidence over his foundation objection.

The Nebraska Workers' Compensation Court is not bound by the usual common-law or statutory rules of evidence or by any technical or formal rules of procedure. *Interiano-Lopez v.*

*Tyson Fresh Meats*, 294 Neb. 586, 883 N.W.2d 676 (2016). See, also, Workers' Comp. Ct. R. of Proc. 10(A) (2018). Admission of evidence is within the discretion of the Workers' Compensation Court, whose determination in this regard will not be reversed upon appeal absent an abuse of discretion. *Tchikobava v. Albatross Express*, 293 Neb. 223, 876 N.W.2d 610 (2016). Expert testimony should not be received if it appears the witness is not in possession of such facts as will enable him or her to express a reasonably accurate conclusion, as distinguished from a mere guess or conjecture. *Hynes v. Good Samaritan Hosp.*, 291 Neb. 757, 869 N.W.2d 78 (2015). It is within the trial court's discretion to determine whether there is sufficient foundation for an expert witness to give his or her opinion about an issue in question. *Id.*

In Dudley's affidavit, he set forth his experience practicing workers' compensation law in Nebraska, his knowledge of and level of familiarity with Neilan, and his lack of personal familiarity with Bartels. He detailed the documents and records he relied on in reaching his opinions.

Zimmerman objected to Dudley's affidavit on the basis of foundation, arguing that Dudley's opinions were based on insufficient information, given that Dudley had not spoken to St. John, VonLindeman, or Zimmerman and had not reviewed any of Zimmerman's work product. The compensation court overruled the objection, stating that Zimmerman's arguments "go more toward weight and ultimate relevance." We agree. Receipt of Dudley's affidavit was within the court's discretion, and the court did not abuse that discretion in finding Dudley's opinions had sufficient foundation.

*Division of Attorney Fees.*

Zimmerman asserts that the compensation court erred in dividing the attorney fees equally. He argues that the court should have relied on the contingent fee contract between Bartels and Neilan and St. John to determine their share of the attorney fee rather than the eight factors set forth in the Nebraska Rules of Professional Conduct and identified by the Nebraska Supreme Court in *Hauptman, O'Brien v. Turco*, 273 Neb. 924, 735 N.W.2d 368 (2007).

Neb. Ct. R. of Prof. Cond. § 3-505.3 (rev. 2008) provides:

(a) A lawyer shall not make an agreement for, charge, or collect an unreasonable fee or an unreasonable amount for expenses. The factors to be considered in determining the reasonableness of a fee include the following:

(1) the time and labor required, the novelty and difficulty of the questions involved, and the skill requisite to perform the legal service properly;

(2) the likelihood, if apparent to the client, that the acceptance of the particular employment will preclude other employment by the lawyer;

(3) the fee customarily charged in the locality for similar legal services;

(4) the amount involved and the results obtained;

(5) the time limitations imposed by the client or by the circumstances;

(6) the nature and length of the professional relationship with the client;

(7) the experience, reputation, and ability of the lawyer or lawyers performing the services; and

(8) whether the fee is fixed or contingent.

In support of his argument, Zimmerman relies on *Baker v. Zikas*, 176 Neb. 290, 125 N.W.2d 715 (1964). As we discuss further below, the contingent fee contract at issue in *Baker* is factually distinguishable from that at issue in this case, and contrary to Zimmerman's assertions, the attorney fee in that case was not computed based on the contract, which was no longer in effect, but rather, on the basis of the reasonable value of the services rendered prior to termination of the contract. In *Baker*, a client terminated the services of a law firm before any recovery on behalf of the client. The contract between the client and the law firm in that case was a contingent fee agreement providing a contingent fee of 40 percent of the amount recovered. The *Baker* court determined that the original contingent fee contract was no longer in effect after the client terminated the law firm's services. The court held that a client has the absolute power and right to discharge an attorney, with or without cause, subject only to the liability to compensate the attorney for the reasonable value of his services actually rendered up to the date of the termination of the employment. *Id.* The *Baker* court then determined the reasonable value of the services rendered prior to termination.

Zimmerman argues that the compensation court in this case should have determined the amount of Bartels and Neilan's fee based on the contingent fee contract between them and St. John, which provides a basis for determining the fee in the event the attorney-client relationship is terminated prior to any offer of settlement or any recovery on St. John's behalf. The contract between Bartels and Neilan and St. John provided:

> Should **CLIENT** choose to discharge **ATTORNEYS** prior to the final settlement or judgment, **CLIENT** agrees to pay **ATTORNEYS** a fee equal to thirty-three and one-third percent (33 1/3%) of the *"gross amount recovered"*, OR on an hourly basis of $175.00 per hour for his/her time and, in addition, $75 per hour for paralegal time from the date of this Agreement to the date of discharge, or the above percentage of **ATTORNEYS'** fee from any settlement offer made prior to discharge, whichever is greater.

(Emphasis in original.) The contract also provides that *"[g]ross amount recovered"* means "the amount recovered before any subtraction of expenses and disbursements" and includes "uninsured and underinsured motor vehicle insurance proceeds, and specially awarded attorneys' fees and costs awarded to **CLIENT**." (Emphasis in original.)

A similar situation was presented in *Byrne v. Hauptman, O'Brien*, 9 Neb. App. 77, 608 N.W.2d 208 (2000). In that case, a former client who settled a personal injury action and his new attorney filed a declaratory judgment action against a law firm that represented the client prior to the settlement, arguing that law firm's contingent fee agreement was unenforceable and that the firm was not entitled to any attorney fees from the settlement. The trial court granted summary judgment in favor of the law firm, and the client and new attorney appealed. On appeal, this court found the contingent fee contract distinguishable from that at issue in *Baker* because it provided a basis for determining the law firm's fee in the event the attorney-client relationship was terminated prior to settlement or any recovery on behalf of the client. Nevertheless, this court concluded that only those attorney fees which are reasonable will be allowed under a contract which provides for attorney fees, and the attorney requesting fees bears the burden of presenting sufficient evidence to establish the reasonableness of the fees. *Id.* The contract at issue in *Byrne* did not set forth the

firm's hourly rate or the number of hours to be expended. Other evidence in the record showed the firm's standard hourly rate, the number of hours expended, and briefly summarized the services performed. The record did not specify whether the rate or the number of hours expended were reasonable. Accordingly, this court found a factual issue regarding the reasonableness of the fee and reversed the grant of summary judgment.

The Nebraska Supreme Court considered an attorney fee pursuant to a substantially similar contingent fee contract provision in *Hauptman, O'Brien v. Turco*, 273 Neb. 924, 735 N.W.2d 368 (2007). In that case, a law firm sued a former client to enforce an attorney lien. The trial court granted summary judgment in favor of the law firm, and the client appealed. On appeal, the Nebraska Supreme Court addressed the law firm's argument that the reasonableness of the fee computed according to the contract was not relevant. The court acknowledged that an attorney fee agreement is different from conventional commercial contracts. *Id.* The court further observed that an attorney may not recover for services rendered if those services are rendered in contradiction to the requirements of professional responsibility and are inconsistent with the character of the profession. *Id.* The court noted the eight factors to be considered in determining the reasonableness of a fee listed in § 3-505.3. The court held that an attorney fee computed pursuant to a contingent fee agreement is subject to the same standard of reasonableness as any other attorney fee. *Hauptman, O'Brien v. Turco, supra*. The court went on to state that "whether a fee is fixed or contingent is only one factor to be considered in determining whether a fee is reasonable." *Id.* at 931, 735 N.W.2d at 374. In a suit to recover an unpaid fee, the lawyer has the burden of persuading the trier of fact, when relevant, of the existence and terms of any fee contract, the making of any disclosures to the client required to render a contract enforceable, and the extent and value of the lawyer's services. *Id.* The value of an attorney's services is ordinarily a question of fact. *Id.* Because there was no evidence of the extent and value of the professional services performed by the law firm during the period from when the contingent fee agreement was executed until the client terminated representation, the Supreme Court reversed the grant of summary judgment and remanded for further proceedings.

More recently in *Stueve v. Valmont Indus.*, 277 Neb. 292, 761 N.W.2d 544 (2009), the Nebraska Supreme Court held that when an attorney's services are terminated prior to the completion of representation, the attorney is entitled to the reasonable value of his or her services rendered up to the time of termination. The court further held that an attorney fee contract is not enforceable in the absence of a showing that the amount of the claimed fee is reasonable. *Id.*

As the above case law makes clear, the determination of Bartels and Neilan's share of the attorney fee is to be judged on a reasonableness standard and that the factors listed in § 3-505.3 provide a basis for evaluating reasonableness. The contingent fee contract in this case provided a basis for determining Bartels and Neilan's fee in the event of their discharge prior to conclusion of the case. There was sufficient evidence in the record for the compensation court to make a determination as to the reasonableness of that fee. The court's findings of fact in this regard are not clearly erroneous. Under the circumstances of this case, it did not err in dividing the attorney fee equally.

## CONCLUSION

The compensation court did not err in admitting Dudley's affidavit into evidence or in dividing the attorney fees equally.

AFFIRMED.